**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------ x
                                            :
DENNIS L. MONTGOMERY,                       :        Civ. Action 15 Misc. 0363
                                            :
                          Plaintiff,        :
                                            :
        v.                                  :
                                            :
SIMON & SCHUSTER,                           :
                                            :
and                                         :
                                            :
PRISCILLA PAINTON,                          :
                                            :
and                                         :
                                            :
TINA BENNETT,                               :
                                            :
                          Defendants.       :
                                            :
------------------------------------------------------------ x
```

---

### NON-PARTIES SIMON & SCHUSTER, INC. AND PRISCILLA PAINTON'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF DENNIS MONTGOMERY'S MOTION TO COMPEL AND IN SUPPORT OF NON-PARTIES SIMON & SCHUSTER, INC. AND PRISCILLA PAINTON'S EMERGENT MOTION TO QUASH

---

McCUSKER, ANSELMI, ROSEN &
CARVELLI, P.C.
805 Third Avenue, 12th Floor
New York, NY 10022
(212) 308-0070
Attorneys for Non-Parties
Simon & Schuster, Inc. and Priscilla Painton

On the Brief:
Bruce S. Rosen, Esq.
Sarah Fehm Stewart, Esq.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................... ii

INTRODUCTION ............................................................................................... 1

FACTUAL BACKGROUND ................................................................................... 4

     I.      THE LIBEL ACTION. ............................................................. 4

     II.     THE RISEN BOOK. ............................................................... 5

     III.    THE SUBPOENAS. ............................................................... 6

     IV.    SERVICE OF PROCESS. ......................................................... 6

ARGUMENT .................................................................................................... 9

     I.      LEGAL STANDARD. ............................................................. 9

     II.     THE SUBPOENAS WERE NOT PROPERLY SERVED ON S&S AND
            MS. PAINTON. ................................................................ 10

     III.    NEW YORK'S SHIELD LAW PROVIDES THE S&S NON-PARTIES
            ABSOLUTE AND QUALIFIED PROTECTION AGAINST COMPELLED
            DISCLOSURE ................................................................. 13

     IV.    PLAINTIFF'S REQUESTS ARE FATALLY OVERBROAD AND
            NEITHER S&S NOR MS. PAINTON SHOULD BE COMPELLED
            TO RESPOND. ................................................................ 19

     V.     THE S&S NON-PARTIES OPPOSE REMOTE CONFERENCING
            OF ANY DEPOSITION. ......................................................... 25

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

Ackermann v. New York City Dep't of Info. Tech. & Telecommunications,
  No. 09 CV 2436 (JBW/LB), 2010 WL 1172625 (E.D.N.Y. Mar. 24, 2010)..........................10

In re Application to Quash Subpoena to Nat'l Broad. Co.,
  79 F.3d 346 (2d Cir.1996)......................................................................................................16

Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas,
  262 F.R.D. 293 (S.D.N.Y. 2009) ...........................................................................................11

AroChem Int'l, Inc. v. Buirkle,
  968 F.2d 266 (2d Cir. 1992)...................................................................................................14

Baker v. Goldman Sachs & Co.,
  669 F.3d 105 (2d Cir. 2012)............................................................................................14, 16

Bower v. Weisman,
  669 F.Supp. 602 (S.D.N.Y. 1987) .........................................................................................14

Cadlerock Joint Venture, L.P. v. Adon Fruits & Vegetables Inc.,
  No. 09-CV-2507 RRM RER, 2010 WL 2346283 (E.D.N.Y. Apr. 21, 2010) ........................11

Carey v. Air Cargo Associates, Inc.,
  No. 18 MS 302/09-2353, 2011 WL 446654 (S.D.N.Y. Feb. 7, 2011)....................................13

Celle v. Filipino Reporter Enterprises Inc.,
  209 F.3d 163 (2d Cir. 2000)...................................................................................................17

Cohen v. City of New York,
  255 F.R.D. 110 (S.D.N.Y. 2008) ......................................................................................10, 20

Collens v. City of New York,
  222 F.R.D. 249 (S.D.N.Y. 2004) ...........................................................................................19

Cooney v. Barry Sch. of Law,
  994 F. Supp. 2d 268 (E.D.N.Y. 2014), appeal dismissed (Mar. 21, 2014)...........................12

Cordius Trust v. Kummerfeld,
  No. 99 CIV. 3200 (DLC), 2000 WL 10268 (S.D.N.Y. Jan. 3, 2000)....................................11

Don King Prods., Inc. v. Douglas,
  131 F.R.D. 421 (S.D.N.Y. 1990) ...........................................................................................14

In re Eisinger,
  No. 09-10053-PBS, 2011 WL 1458230 (S.D.N.Y. Apr. 12, 2011)........................................14

Fears v. Wilhelmina Model Agency, Inc.,
    No. 02 Civ. 4911, 2004 WL 719185 (S.D.N.Y. April 1, 2004)................................................10

In re Fitch, Inc.,
    330 F.3d 104 (2d Cir. 2003).......................................................................................9

Gonzales v. Nat'l Broad. Co., Inc.,
    194 F.3d 29 (2d Cir.1999)...................................................................................16, 17

Icon Compliance Servs., LLC v. Port Auth. of New York & New Jersey,
    No. 14-CV-4123 RA KNF, 2015 WL 783377 (S.D.N.Y. Feb. 24, 2015) ..............................13

Klaxon Co. v. Stentor Elec. Mfg. Co.,
    313 U.S. 487 (1941)................................................................................................14

Lugosch v. Congel,
    218 F.R.D. 41 (N.D.N.Y. 2003)...................................................................................19

Macdraw, Inc. v. The CIT Group Equipment Financing, Inc., et al.,
    994 F. Supp. 447 (S.D.N.Y. 1997) .................................................................................2

McMann v. SEC,
    87 F.2d 377 (2d Cir.) (L. Hand, J.), cert. denied, 301 U.S. 684 (1937)...................................24

Montgomery v. Risen, et al.,
    Civil Action 15-cv-20782 (S.D. Fla.) ...........................................................................4, 14, 17

Night Hawk Ltd. v. Briarpatch Ltd., L.P.,
    No. 03 CIV.1382 RWS, 2003 WL 23018833 (S.D.N.Y. Dec. 23, 2003)...............................23

Price Waterhouse LLP v. First Am. Corp.,
    182 F.R.D. 56 (S.D.N.Y. 1998) .............................................................................10, 19

Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,
    496 B.R. 713 (Bankr. S.D.N.Y. 2013) ...........................................................................19

Spina v. Our Lady of Mercy Med. Ctr.,
    No. 97 CIV 4661 (RCC), 2001 WL 630481 (S.D.N.Y. June 7, 2001)...................................19

Stephens v. Am. Home Assur. Co.,
    No. 91CIV2898, 1995 WL 230333 (S.D.N.Y. Apr. 17, 1995)..............................................14

In re Sur. Ass'n of Am.,
    388 F.2d 412 (2d Cir. 1967).......................................................................................19

Tube City IMS, LLC v. Anza Capital Partners, LLC,
    No. 14 CIV. 1783 PAE, 2014 WL 6361746 (S.D.N.Y. Nov. 14, 2014)...........................10, 11

U.S. Bancorp Equip. Fin., Inc. v. Babylon Transit, Inc.,
    270 F.R.D. 136 (E.D.N.Y. 2010) ...................................................................................9

United States v. Int'l Bus. Machines Corp.,
    83 F.R.D. 97 (S.D.N.Y. 1979) ................................................................24

**State Cases**

In re Am. Broad. Companies, Inc.,
    189 Misc.2d 805, 735 N.Y.S.2d 919 (Sup.Ct. 2001) ...............................16

In re Application of Steven Emerson,
    303 A.D.2d 229 (1st Dep't. 2003) ...........................................................18

Babcock v. Jackson,
    240 N.Y.S.2d 743 (N.Y. 1963) ................................................................14

Flynn v. NYP Holdings, Inc.,
    235 A.D.2d 907 (3rd Dep't. 1997)........................................................17, 18

In re Gibson,
    106 A.D.3d 424 (1st Dep't. 2013) ...........................................................18

IMO American Broadcasting Companies, Inc., 189 Misc.2d 805 (2001) ....................................18

O'Neil v. Oakgrove Constr.,
    71 N.Y.2d 521 (1988) ..............................................................................16

People v. LeGrand,
    67 A.D.2d 446, 415 N.Y.S.2d 252 (1979) ...............................................15

People v. Wolf,
    69 Misc.2d 256, 329 N.Y.S.2d 291 (Sup. Ct.) affd, 39 A.D.2d 864, 333 N.Y.S.2d
    299 (1972)...............................................................................................15

Premier Staffing Servs. of New York, Inc. v. RDI Enterprises, Inc.,
    39 Misc. 3d 978, 962 N.Y.S.2d 891 (Sup. Ct. 2013) ...............................12

Strong v. Bi-Lo Wholesalers,
    265 A.D.2d 745, 698 N.Y.S.2d 738 (2d Dep't 1999) ...............................12

In re Subpoena Duces Tecum Served on Bell Commc'ns Research, Inc.,
    No. MA-85, 1997 WL 10919 (S.D.N.Y. Jan. 13, 1997) modified, No. M8-85, 1997
    WL 16747 (S.D.N.Y. Jan. 17, 1997) .........................................................9

**State Statutes**

District of Columbia Shield Law, D.C. Code 1981, §§ 16–4701 - 16–4704................................13

Maryland Shield Law, Md. Cts. & Jud. Proc. Code Ann. § 9-112(c)(1) ......................................13

N.Y. Civil Rights Law § 79-h ................................................................ *passim*

**Rules**

C.P.L.R. § 311(a)(1) .............................................................................................12

C.P.L.R. § 3101(a) ...............................................................................................16

Fed. R. Civ. P. 4 ....................................................................................................11

Fed. R. Civ. P. 12(b)(6)........................................................................................4, 5

Fed. R. Civ. P. 26(b) .........................................................................................19, 20

Fed. R. Civ. P. 45 ........................................................................................ *passim*

Fed. R. Evid. 501 ..................................................................................................14

## INTRODUCTION

Non-parties Simon & Schuster, Inc. ("S&S") and Priscilla Painton (collectively, "S&S Non-parties") respectfully submit this opposition to Dennis Montgomery's ("Movant" or "Plaintiff") motion to compel compliance with two subpoenas duces tecum (the "Motion to Compel"), and in support of the S&S Non-parties' motion to quash (the "Motion to Quash").  The improperly served subpoenas directed to the S&S Non-parties seek testimony and documents protected by New York's Shield Law and the First Amendment, and are significantly overbroad and burdensome.

Montgomery's subpoenas are part of a libel suit pending in the Southern District of Florida (the "Libel Action") against author and *New York Times* reporter James Risen and Houghton Mifflin Harcourt Company ("Houghton Mifflin") concerning Mr. Risen's 2014 book, *Pay Any Price: Greed, Power and Endless War* ("Pay Any Price" or "the Book").  Plaintiff claims a discrete chapter in the Book falsely accuses him of committing what in effect was "the biggest hoax in American history" against the U.S. defense establishment following the 9/11 terrorist attacks. Movant erroneously insists without any proffer of proof that the S&S Non-parties can provide testimony and documents that are "critical" and "highly relevant" to the underlying action — specifically, that S&S refused to publish the Book because it defamed Plaintiff.

S&S originally contracted with Mr. Risen several years ago to publish the Book and Ms. Painton was assigned as its editor.  In 2013, S&S reverted rights to the Book back to Mr. Risen who sold them to Houghton Mifflin, which published the Book in 2014.  Testimony from Houghton Mifflin clearly stated that S&S's decision to relinquish rights was due to differences with Mr. Risen over the manuscript's organization and the timing of its publication as a book.

Despite this testimony, Movant has propounded intrusive, overbroad and burdensome subpoenas to the S&S Non-parties which at their heart seek information concerning the thought

1

processes of those at S&S who agreed to relinquish rights to the Book, in the hopes of discovering that S&S believed the manuscript defamed Plaintiff.  Even if this information existed as proffered by Movant, it is nowhere near as essential enough to Plaintiff's case so as to subject the S&S Non-parties to the significant expense and undue burden that compliance with the subpoenas would require.  The subpoenas include 23 broadly worded requests seeking "any and all" documents that "refer or relate" to communications, contracts, contract negotiations, payment information, confidential sources and the internal decision-making of a publisher -- information that goes far beyond issues in the Libel Action.

Against this backdrop, Plaintiff's Motion to Compel should be denied for at least three separate reasons.  First, the subpoenas were never personally served on the S&S Non-parties, despite representations to the contrary by a process server for Larry Klayman[1], counsel for Plaintiff.  Affidavits submitted herewith demonstrate conclusively that the process server's affidavits of service on the S&S Non-parties are erroneous if not purposefully deceitful.  Even if the process server's version of the events were to be believed, Ms. Painton is not authorized to accept service for S&S, and service on the corporation remains deficient.  Moreover, the subsequent service by mail without payment of required attendance fees does not satisfy Fed. R. Civ. P. 45.

---

[1] Although Mr. Klayman is counsel for Plaintiff in the Libel Action, he has had his *pro hac vice* privileges revoked in this District after a thorough and unsparing decision by then U.S. District Court Judge Dennis Chin which requires that a copy of that decision be appended to any such future application.  See Macdraw, Inc. v. The CIT Group Equipment Financing, Inc., et al., 994 F. Supp. 447 (S.D.N.Y. 1997).  While Mr. Klayman has not applied for *pro hac vice* privileges to pursue Plaintiff's Motion to Compel, he has been extensively involved in all facets of its prosecution, including email discussions concerning objections to the subpoenas by the S&S Non-parties and transmittal of the Motion to Compel by email to in-house counsel for the S&S Non-parties.  See Declaration of Bruce S. Rosen ("Rosen Decl."), Ex. A.  Counsel signing this motion, Raymond Negron, is, upon information and belief, based in New York, but lists himself as affiliated with Mr. Klayman's law firm out of Washington, D.C.  For all intents and purposes, the S&S Non-parties believe Mr. Negron is acting as a straw man to avoid Mr. Klayman having to again seek *pro hac vice* privileges.

Second, Movant's reliance on the Florida Reporter's Shield Law is misplaced.  The issues raised by these motions fall squarely within the provisions of New York's Shield Law (N.Y. Civil Rights Law § 79-h).  As such, much of the testimony and documents sought are either confidential and therefore afforded absolute privilege from disclosure, or non-confidential testimony and documents afforded a qualified privilege with a high threshold requiring Movant to show, among other requirements, that the underlying claim "virtually rises or falls with the admission or exclusion" of the evidence sought by the subpoenas.  Movant has not made such a showing; instead, Movant offers nothing more than speculation and conjecture for seeking the subpoenaed testimony and documents, claiming that it is likely that S&S believed the Book was defamatory of Plaintiff, and that this information would be "critical and relevant," or "highly probative" to the Libel Action's prosecution.  What S&S knew or believed regarding the manuscript cannot be in any way relevant (let alone evidence that causes Plaintiff's claim to "rise or fall") to whether the published Book itself contains actionable defamation or was published with actual malice by Houghton Mifflin, central issues in the Libel Action.  Not only are we aware of no proffered evidence from which this Court could even infer that S&S decided to revert publication rights because of any worries concerning defamation of Plaintiff, but papers filed in the Libel Action reveal that much of the section of the Book devoted to Plaintiff's story was previously published in other publications which were not sued for defamation.  Moreover, and important to the Shield Law's requirements, Movant never asked questions related to this supposed "core issue" during Defendant Risen's deposition.  Nevertheless, he now insists on asking these questions of non-parties protected by privilege.

Finally, even if the subpoenas are valid and not protected by privilege in whole or in part, far from being "quite narrow and targeted," the testimony and documents demanded in the subpoenas would subject the S&S Non-parties to undue burden, expense and inconvenience –

something that courts in the Second Circuit have routinely rejected where the information sought from the non-parties is of limited, if any, relevance.

For these reasons and others cited below, Movant's Motion to Compel should be denied in its entirety, and the S&S Non-parties' Motion to Quash granted.

## FACTUAL BACKGROUND

### I.      THE LIBEL ACTION.

The subpoenas at issue were issued out of the Southern District of Florida in the underlying Libel Action entitled Montgomery v. Risen, et al., Civil Action 15-cv-20782 (S.D. Fla.).  The Amended Complaint in the Libel Action seeks $350 million in damages based upon alleged defamatory statements in Chapter Two of Mr. Risen's book Pay Any Price, entitled "The Emperor of the War of Terror."  See Movant's Ex. 4.[2]  Plaintiff alleges that the chapter essentially portrays Plaintiff as a con artist who gained the trust of a U.S. defense establishment desperate for ways to prevent another terrorist attack post 9/11, and then defrauded them into believing that he had developed software capable of decrypting Al Qaeda messages allegedly contained in broadcasts over the Al Jazeera news network.  See id. at Ex. A; Movant's Br.[3] at 3.

Plaintiff's Amended Complaint was filed on or about April 28, 2015.  See Docket of Civil Action 15-cv-20782 (S.D. Fla.), Document No. 44.  On May 15, 2015, Defendants filed a second motion to dismiss under Fed. R. Civ. P. 12(b)(6) or transfer the case to the District of Columbia, among other relief.  See id., Document No. 52.  The Hon. Jose E. Martinez, U.S.D.J. reserved decision on the motion, as well as on another pending motion by Defendants for spoliation

---

[2] Movant's memorandum of law in support of his Motion to Compel attaches numerous unsworn exhibits, including the Amended Complaint which is attached as Exhibit 4.  Movant's unsworn exhibits will hereinafter be referred to as "Movant's Exs," and the memorandum as "Movant's Br."

[3] "Movant's Br." Refers to Movant's Memorandum of Law submitted in support of his Motion to Compel.

sanctions, while the case has proceeded with expedited discovery ending on November 19, 2015 and is scheduled for trial in March 2016.  See id., Document No. 131.

## II.    THE RISEN BOOK.

There is no dispute that: (1) non-party S&S had a contract with Mr. Risen to publish a book and that Ms. Painton, Vice President and Executive Editor of the S&S imprint, was assigned to edit Mr. Risen's manuscript; and (2) the Book was ultimately published by Houghton Mifflin in 2014 with Bruce Nichols as its editor.  Mr. Nichols formerly worked for S&S and was Mr. Risen's editor on a 2006 book published by S&S's imprint Free Press.  As Houghton Mifflin's corporate representative in the Libel Action, Mr. Nichols testified that after Mr. Risen submitted his manuscript to S&S, he was approached by Mr. Risen's agent, Tina Bennett.  Subsequently, Mr. Risen reported to him that "his relationship with Simon & Schuster was beginning to break down." See Movant's Ex. 8 at T23:17-18.  Mr. Risen further reported that Ms. Painton and S&S "did not see eye to eye [with Mr. Risen] on how to structure and publish the book" (id. at T24:2-4), and "they could not see eye to eye on how to structure and when to publish" (id. at T25:16-18).  Mr. Nichols also testified that: "Pay Any Price is the book they [S&S] had under contract, and they could not agree with Jim [Mr. Risen] on how to structure it or when to publish it.  That's why Pay Any Price became available to Houghton Mifflin."  Id. at T28:16-20.

Despite this sworn testimony, Plaintiff now incredibly contends that the reason for the transfer of rights was due to S&S's alleged belief that Pay Any Price was defamatory and the result of actual malice − a contention that Plaintiff **failed to even ask Mr. Nichols or Mr. Risen during their recent depositions**[4] and instead, at the 11th hour of discovery, seeks from non-parties

---

[4] While Mr. Risen's deposition is partially sealed, a perusal of the word index for the entire deposition does not include the words "Simon & Schuster," "S&S," or "Painton."  See Rosen Decl., Ex. B.

protected by privilege, and without sufficient interest in the litigation so as to be subjected to such unduly burdensome and expedited discovery.

### III.   THE SUBPOENAS.

Movant now seeks unbridled testimony and documents with respect to twenty-three (23) categories of information, wildly claiming that:

- "The reasons why Simon and Schuster ultimately did not publish the book are **critical and relevant** as the testimony and documents **will likely show** that Priscilla Painton and Simon and Schuster rejected publication because it saw and determined that the book was defamatory toward Mr. Montgomery and/or contained classified government information that could subject them to civil and criminal liability" (Movant's Br. at 4) (emphasis added);
- "This testimony and document production … **is highly probative** because it would go to show actual malice or bad faith" (id.) (emphasis added);
- "The testimony goes to a **core issue** of the case" (id. at 5) (emphasis added);
- "One of the principal issues in this case is the question of whether Simon & Schuster and Priscilla Painton intentionally decided not to publish Defendant James Risen's Book because they perceived it to be a potential liability – if not criminal prosecution – because of defamatory statements or illegal use of confidential and/or governmental classified sources" (id. at 8); and
- "Based on information that has come to light during discovery and through the deposition of Bruce Nichols, **there is little doubt** that Simon and Schuster and Priscilla Painton decided to reject Defendant James Risen's Book for a good reason, particularly because they had been Defendant Risen's longtime publisher" (id. at 8-9) (emphasis added).

These arguments are premised on sheer conjecture, bounded only by the limits of Plaintiff's and/or his counsel's imagination. In response, on November 2, 2015, S&S, through in-house counsel Andrew Nieh of its parent corporation, CBS Corporation, served objections to the subpoenas. See Movant's Ex. 9. Movant then rejected repeated written requests by Mr. Nieh to meet and confer as "pointless." See Movant's Ex. 10; Rosen Decl., Ex. A.

### IV.   SERVICE OF PROCESS.

Among the objections raised by the S&S Non-parties was the insufficient service of the subpoenas on the S&S Non-parties. While Plaintiff's process server swears that he personally served the subpoenas on Ms. Painton, the initial two affidavits by the process server, identified as Raymond Hollingsworth (see Movant's Ex. 5), claim personal service on a woman in her 50s,

about 5'5" in height and weighing approximately 140 pounds with brown hair, and who was wearing glasses.  <u>See</u> <u>id.</u>  The process server's initial affidavits further state that the subpoenas were served at S&S's office at 1230 Avenue of the Americas in Manhattan, where "documents were left on desk as defendant refused to accept."  <u>See</u> <u>id.</u>  A supplemental affidavit by Mr. Hollingsworth submitted after the S&S Non-Parties objected, states that he personally served Ms. Painton with her subpoena on October 20, 2015 at 11:58 a.m. (<u>see</u> Movant's Ex. 6 at ¶ 1), she was physically present (<u>see</u> <u>id.</u> at ¶ 2), she "turned her back away and walked away after seeing that she was being served with the Subpoena," (<u>see</u> <u>id.</u> at ¶ 3) and he "therefore left the Subpoena on the desk *in her presence* and told her that she was being served (<u>see</u> <u>id.</u> at ¶ 4) (emphasis in original).  The affidavits repeat the same allegations regarding the subpoena purportedly served on S&S.  <u>See</u> <u>id.</u>

However, the affidavits of Ms. Painton and the security guard on duty at the S&S building on October 20, 2015 firmly establish that the process server's affidavits are false, or at the very least suspect.  For example, while Ms. Painton is a 57-year-old white woman with brown hair, she is far shorter and skinnier than the process server's description, being only 5'2" tall and weighing approximately 114 pounds.  <u>See</u> Affidavit of Priscilla Painton ("Painton Aff."), attached to Rosen Decl. as Ex. C, at ¶ 6.   She does not ordinarily wear glasses and would not have worn them during the workday.  <u>Id.</u>  S&S's offices are located in a restricted area on upper floors and require visitors to check in with security personnel in the building lobby on the ground floor.  <u>Id.</u> at ¶ 5.  This reception area does not contain a "desk" per se, but a high and long marble slab/metal counter which is attended by a uniformed security guard (or multiple guards).  <u>Id.</u>  Ms. Painton remained in her office on the 14th floor of the S&S building after being called by a security guard for the building, who told her that an unidentified person wanted to serve her with papers.  <u>Id.</u> at ¶ 9.  She never left her office to meet the

process server and no one attempted to personally serve her at any time that day and no one has attempted to personally serve her since that day.  Id.

A security guard on duty at the S&S building reception area on October 20, 2015 reinforces Ms. Painton's affidavit and further contradicts the process server.  Christopher Reyes, an employee of the building owner, Tishman Speyer, specifically recalls the process server coming to the reception area after his shift began between 3 p.m. and 4 p.m. -- not around noon as set forth by the process server's affidavits.  See Affidavit of Christopher Reyes ("Reyes Aff."), attached to Rosen Decl. as Ex. D, at ¶¶ 1-3.  After the process server did not identify himself but said only that he had a subpoena for Ms. Painton, Mr. Reyes called her office to tell her, she did not come down to accept the subpoena.  Id. at ¶3.  When Mr. Reyes got off the phone, he let the process server know Ms. Painton would not be coming down to the lobby and gave the process server back the envelope containing the subpoenas.  Id. at ¶4. The process server then left the building, taking the envelope with him, and he did not see the process server again.  Id. at ¶¶ 4-5.

Copies of the subpoenas were also sent to Ms. Painton by regular mail and were received two days after this purported service on October 22, 2015.  See Affidavit of Sophia Jimenez ("Jimenez Aff."), attached to Rosen Decl. as Ex. E, at ¶ 2.  These mailed subpoenas failed to simultaneously provide attendance and mileage fees as required by Fed. R. Civ. P. 45(c).  See Movant's Ex.  9 at pg. 1; Movant's Ex. 10.[5]

---

[5] This exhibit contains an email exchange between Mr. Nieh and Mr. Klayman, referencing Mr. Klayman's attempt to provide these fees immediately after receiving the S&S Non-parties' objection letter, approximately two weeks after purported service of the subpoenas.  Movant chastises Mr. Nieh for asking where to return the fee checks and cleverly suggests, although Movant does not state affirmatively, that checks were originally provided with the mailed subpoenas (Movant's Br. at 7, fn. 2), yet fails to provide any proof that these checks were actually provided with the subpoenas.  Then he blithely declares that this was a sanctionable "obstructionist tactic."

Moreover, even if Ms. Painton was personally served, which she was not, she is not an officer, director, managing or general agent of S&S and she is not authorized to accept service on its behalf nor authorized to produce corporate property in response to a subpoena.  See Painton Aff. at ¶ 10.

## ARGUMENT

### I.    LEGAL STANDARD.

Plaintiff's motion to compel requires that the serving party prove that compliance with its document request would not impose "significant expense" or "undue burden."  In re Subpoena Duces Tecum Served on Bell Commc'ns Research, Inc., No. MA-85, 1997 WL 10919, at *2 (S.D.N.Y. Jan. 13, 1997) modified, No. M8-85, 1997 WL 16747 (S.D.N.Y. Jan. 17, 1997); see also Rule 45(d)(1).  For a motion to compel to be issued, the subpoena must meet the procedural requirements set forth by Rule 45.  See U.S. Bancorp Equip. Fin., Inc. v. Babylon Transit, Inc., 270 F.R.D. 136, 139 (E.D.N.Y. 2010) (denying motion to compel compliance with procedurally invalid and unenforceable subpoenas).  Such motions are "entrusted to the sound discretion of the court."  See In re Fitch, Inc., 330 F.3d 104, 108 (2d Cir. 2003).

The S&S Non-parties may also move to quash the subpoenas under Rule 45(d)(3)(A), which **requires** a court to quash or modify same where the subpoena: (1) "fails to allow a reasonable time to comply"; (2) "requires a person to comply beyond the geographical limits specified in Rule 45(c)"; (3) "requires disclosure of privileged or other protected matter, if no exception or waiver applies"; or (4) "subjects a person to undue burden."  A subpoena may also be quashed or modified where it requires "disclosing a trade secret or other confidential research, development, or commercial information"; or "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."  Fed. R. Civ. P. 45(d)(3)(B).

"In assessing these considerations, **special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation**." Cohen v. City of New York, 255 F.R.D. 110, 117 (S.D.N.Y. 2008) (internal quotation and citation omitted) (emphasis added). **"'[T]he Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty.'"** Id. (quoting Fears v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911, 2004 WL 719185, at *1 (S.D.N.Y. April 1, 2004)) (emphasis added). If the information sought from a non-party is of "'doubtful and tangential relevance,'" "'enforcement of the subpoena would constitute an unreasonable or burdensome misuse of the discovery process.'" Ackermann v. New York City Dep't of Info. Tech. & Telecommunications, No. 09 CV 2436 JBW/LB, 2010 WL 1172625, at *1 (E.D.N.Y. Mar. 24, 2010) (internal quotation and citation omitted). In fact, it is the "central goal" of Rule 45 to "prevent nonparty witnesses from being subjected to excessive discovery burdens." Price Waterhouse LLP v. First Am. Corp., 182 F.R.D. 56, 63 (S.D.N.Y. 1998) (citation omitted).

## II.   THE SUBPOENAS WERE NOT PROPERLY SERVED ON S&S AND MS. PAINTON.

Rule 45 provides that a subpoena "must issue from the court where the action is pending," may be issued and signed by an attorney "authorized to practice in the issuing court," and must be served by "delivering a copy to the named person and, if the subpoena requests that person's attendance, tendering the fees for one day's attendance and the mileage allowed by law." See Fed. R. Civ. P.45(a)(2)-(3) and 45(b)(1).

"Significantly, [t]here is no Second Circuit case law interpreting the Rule 45 requirement of 'deliver[y]' as requiring personal service." Tube City IMS, LLC v. Anza Capital Partners, LLC, No. 14 CIV. 1783 PAE, 2014 WL 6361746, at *2 (S.D.N.Y. Nov. 14, 2014) (internal quotation and citation omitted). Rather, district courts in this Circuit have held that, **in appropriate**

**circumstances**, alternative forms of service may be used, as long as they are calculated to provide timely actual notice.  Id. (internal citations omitted).  "According to this interpretation, however, alternate methods of service are available **only after 'the [serving party] diligently. . . attempted to effectuate personal service and presented proof that sufficient notice would be [given].'**"  Cadlerock Joint Venture, L.P. v. Adon Fruits & Vegetables Inc., No. 09-CV-2507 RRM RER, 2010 WL 2346283, at *4 (E.D.N.Y. Apr. 21, 2010) (internal quotation and citation omitted) (emphasis added).

For example, in Cordius Trust v. Kummerfeld, No. 99 CIV. 3200 (DLC), 2000 WL 10268, at *1-2 (S.D.N.Y. Jan. 3, 2000), this Court allowed for alternative service "given the textual ambiguity of Rule 45 **combined with the repeated attempts of the plaintiff to effectuate personal service**."  (Emphasis added).  In that case, there were repeated actions on the part of the subpoenaed party to evade multiple attempts at personal service through disingenuous means.  As a result, the Cordius Court crafted an alternative means of service, permitting the plaintiff to serve the subpoena by certified mail, which it said "comports with due process."

In stark contrast, here, there was only a single purported attempt to serve the subpoenas, the details of which are sharply disputed.  Thereafter, the subpoenas were merely sent by regular mail – as opposed to the certified mail permitted by the Cordius Court -- without the attendance fees required by the Rule.  Even though both S&S and Ms. Painton are now aware of these subpoenas, Movant should nonetheless not be rewarded for his shortcuts, skirting the law, and the dubious affidavits of his process server.

Even if this Court were to find that service on Ms. Painton was effective in accordance with the above principles, it cannot find so with regard to service on the corporation, which requires a different standard.  Rule 45 does not specify what constitutes personal service on a corporation in the United States or in a foreign country.  See Aristocrat Leisure Ltd. v. Deutsche Bank Trust

Co. Americas, 262 F.R.D. 293, 305 (S.D.N.Y. 2009).  "To fill this gap, courts in this Circuit rely on the service of process requirements on corporations set out in Federal Rule of Civil Procedure 4" as well as state law.  See id.; Cooney v. Barry Sch. of Law, 994 F. Supp. 2d 268, 270 (E.D.N.Y. 2014), appeal dismissed (Mar. 21, 2014).  Therefore, to effect proper service on a corporation, the subpoena must be served upon "an officer, director, managing, or general agent…"  C.P.L.R. § 311(a)(1).   In addition, New York courts more recently considering this requirement have concluded that delivery does, in fact, require that the papers "be handed to an actual authorized officer, director or other person set forth in the statute".  Premier Staffing Servs. of New York, Inc. v. RDI Enterprises, Inc., 39 Misc. 3d 978, 980, 962 N.Y.S.2d 891, 892 (Sup. Ct. 2013).  Process under CPLR 311(a)(1) means that the subpoena "must be personally delivered to an authorized person, the mailing of the summons and complaint to defendant was ineffectual".  Strong v. Bi-Lo Wholesalers, 265 A.D.2d 745, 745, 698 N.Y.S.2d 738, 738 (2d Dep't 1999).  As noted above, Ms. Painton is neither an officer, director, managing or general agent, nor any other agent authorized by appointment or by law to receive service of process on behalf of S&S.  See Painton Aff. at ¶ 10.  Accordingly, service on Ms. Painton, whether in person or by mail, cannot and does not suffice.  Further, even if Ms. Painton was authorized, she was not personally served with the subpoena.  See id. at ¶¶ 7-9.

Finally, even if service of the subpoenas themselves was deemed technically correct, Rule 45 still requires that the attendance and mileage fees be tendered at the time of service.  As the accompanying affidavits show, the process server who allegedly attempted personal service never left the envelope purportedly containing the subpoenas (Reyes Aff. at ¶ 4), and the regular mail delivery of the subpoenas to S&S did not include cash, a check or money order to pay the required fees (Jimenez Aff. at ¶ 3).  Movant provides no proof that any fees were paid until more than two weeks after the purported personal service. While some Courts permit other than personal service

12

for subpoenas under certain circumstances, the same cannot be said for the requirement that attendance and mileage fees be paid simultaneously, which has been interpreted by multiple courts as adequate grounds to invalidate a subpoena:

> The clear language of Rule 45 indicates—and federal courts both inside and outside of the Second Circuit have held—that failure to tender the required witness fee and mileage allowance can serve as an adequate ground for the invalidation of a subpoena.

Carey v. Air Cargo Associates, Inc., No. 18 MS 302/09-2353, 2011 WL 446654, at *3 (S.D.N.Y. Feb. 7, 2011) (citations omitted).  See also Icon Compliance Servs., LLC v. Port Auth. of New York & New Jersey, No. 14-CV-4123 RA KNF, 2015 WL 783377, at *2 (S.D.N.Y. Feb. 24, 2015) ("the instant subpoena is also invalid on the ground that the plaintiffs failed to tender the appropriate fees, as required by Rule 45(b)(1)).  Courts around the country uniformly agree with this interpretation of Rule 45(b)(1), as do the leading treatises on civil procedure."

Thus for the reasons set forth above, service of the subpoenas was insufficient for failure to provide simultaneous payment of fees as well as failure to provide personal service and/or certified mail service.

### III. NEW YORK'S SHIELD LAW PROVIDES THE S&S NON-PARTIES ABSOLUTE AND QUALIFIED PROTECTION AGAINST COMPELLED DISCLOSURE.

The S&S Non-parties have asserted their objections to the intrusive nature of the subpoenas on the grounds that they seek materials, sources or information related to newsgathering protected by news reporting or reporter's privileges such as New York's Shield Law and/or certain First Amendment protections as set forth by the Second Circuit.[6]

---

[6] The S&S Non-parties also asserted in their objections, in the alternative, that they are protected from compelled questions by the State Constitutions of New York and Florida and/or common law and statutory privileges.  The S&S Non-parties also rely on the Shield Statutes of the District of Columbia (D.C. Code 1981, §§ 16–4701 - 16–4704) and Maryland (Md. Cts. & Jud. Proc. Code Ann. § 9-112(c)(1).

Since this action is based solely on diversity, the existence and scope of a privilege is determined by state law.  Fed. R. Evid. 501; <u>Don King Prods., Inc. v. Douglas</u>, 131 F.R.D. 421, 423 (S.D.N.Y. 1990); <u>Bower v. Weisman</u>, 669 F.Supp. 602, 603 (S.D.N.Y. 1987), <u>Stephens v. Am. Home Assur. Co.</u>, No. 91CIV2898, 1995 WL 230333, at *6-7 (S.D.N.Y. Apr. 17, 1995).  A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits -- here, New York -- to determine which state's privilege law applies.  <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941); <u>AroChem Int'l, Inc. v. Buirkle</u>, 968 F.2d 266, 269–70 (2d Cir. 1992).  New York applies an "interest" analysis.  <u>Babcock v. Jackson</u>, 240 N.Y.S.2d 743, 749–50 (N.Y. 1963); <u>AroChem</u>, 968 F.2d at 270.  Relevant here, because privilege rules are considered "conduct-regulating," New York applies the law of the "locus" of the conduct at issue.  <u>See</u> <u>Stephens</u>, 1995 WL 230333 at *7 (citations omitted).

As such, because the S&S Non-parties are located in New York and the conduct at issue by the S&S Non-parties occurred in New York, New York State law should apply.  Though Movant argues that the Florida State law should apply because Movant resides there and Florida "is the nation's third largest state in population and has a huge readership" (<u>see</u> Movant's Br. at 10), such arguments are without any basis in law, and a transparent attempt to gain the benefit of Florida's weaker Reporter's Shield Law.  Moreover, upon information and belief, Florida was not the residence of Plaintiff at the time the Book was written.  <u>See</u> Docket of Civil Action 15-cv-20782 (S.D. Fla.), Document No. 52 at pg. 7.  The S&S Non-parties aver that the choice of law should focus on the interests of the subpoenaed parties, whose testimony and documents are being sought in New York, rather than the location of litigation regarding publication of a book with which they relinquished all publishing rights.  <u>See</u> <u>In re Eisinger</u>, No. 09-10053-PBS, 2011 WL 1458230, at *2 (S.D.N.Y. Apr. 12, 2011) <u>aff'd sub nom.</u> <u>Baker v. Goldman Sachs & Co.</u>, 669 F.3d

105 (2d Cir. 2012) (applying New York's Shield Law to subpoena on *Wall Street Journal* in New York while underlying action was filed in District of Massachusetts).

New York's Shield Law provides an absolute privilege from testifying and producing documents with regard to news obtained under a promise of confidentiality but only a qualified privilege with regard to news that is both unpublished and not obtained under a promise of confidentiality. N.Y. Civ. Rights Law § 79–h(b)–(c).  To successfully raise a claim of absolute privilege under New York's Shield Law, the information must be imparted to the reporter under a "cloak of confidentiality," and the information or sources must be obtained in the course of gathering news for publication. People v. Wolf, 69 Misc.2d 256, 329 N.Y.S.2d 291 (Sup. Ct.) affd, 39 A.D.2d 864, 333 N.Y.S.2d 299 (1972); People v. LeGrand, 67 A.D.2d 446, 415 N.Y.S.2d 252 (1979).

Relevant here, subpoena requests 10 and 11 (see Movant's Exs. 1-2) directly request confidential materials which are absolutely privileged under this analysis: (10) "Any and all documents that refer or relate in any way to the communications between James Risen and Priscilla Painton **regarding confidential sources**" and (11) "**regarding classified material and/or sources**." (Emphasis added).  In both instances, there can be no dispute that the language in the requests themselves asks for production of materials that would have had to have been imparted to Mr. Risen under a cloak of confidentiality, whether confidential sources or classified material or sources.

Several other requests go directly to the editorial processes of S&S and should be subject to the qualified privilege protecting unpublished information (or are irrelevant and should be quashed, as discussed in Section IV, infra).  A party seeking unpublished "news" may overcome the qualified privilege only by making "a clear and specific showing that the news: (i) is highly material and relevant; (ii) is critical or necessary to the maintenance of a party's claim, defense or

proof of an issue material thereto; and (iii) is not obtainable from any alternative source."  N.Y. Civ. Rights Law § 79–h(c). To determine that unpublished news is either "critical or necessary" within the meaning of § 79–h, "there must be a finding that the claim for which the information is to be used virtually rises or falls with the admission or exclusion of the proffered evidence."  In re Application to Quash Subpoena to Nat'l Broad. Co., 79 F.3d 346, 351 (2d Cir.1996) (internal quotation marks omitted) (also stating that the critical or necessary clause must mean something more than "useful"). "The test is not merely that the material be helpful or probative, but whether or not . . . the action may be presented without it."  In re Am. Broad. Companies, Inc., 189 Misc.2d 805, 808, 735 N.Y.S.2d 919, 922 (Sup.Ct. 2001) (internal quotation marks omitted).  See also Baker, 669 F.3d at 107-08.  New York's Shield Law specifically places the burden on the subpoenaing party to overcome the qualified privilege.  N.Y. Civ. Rights Law § 79–h(c). Accordingly, Plaintiff is required to set forth the requisite -- and demanding -- clear and specific showing to overcome the qualified privilege.  See, e.g., O'Neil v. Oakgrove Constr., 71 N.Y.2d 521, 527 (1988) ("As formulated by the decisions of these courts, the privilege bars coerced disclosure of resource materials . . . which are obtained or otherwise generated in the course of newsgathering or newspreparing activities, unless the moving litigant satisfies a tripartite test which is more demanding than the requirements of CPLR 3101(a).").

Plaintiff has utterly failed to do so[7], instead offering bombastic statements and rank conclusory allegations in his motion based on a scattershot version of events (as set forth above at

---

[7] Likewise, Plaintiff has failed to make **any** effort to satisfy the similar, but not as stringent, test to overcome the qualified privilege for non-confidential information offered by the Second Circuit. Under the Second Circuit test, non-confidential materials are protected under the reporter's privilege because there is a "broader concern for the potential harm to the paramount public interest in the maintenance of a vigorous, aggressive and independent press."  Gonzales v. Nat'l Broad. Co., Inc., 194 F.3d 29, 33 (2d Cir.1999). Under Gonzales, the Court may compel disclosure of non-confidential materials only when the requesting party shows the materials at issue are (1) "of

page 6), and spuriously claiming the reasons why S&S ultimately did not publish the Book are **critical and relevant** because they anticipate a particular answer for which there is not a shred of evidence, and insist the answer **will likely show** that S&S rejected publication because it saw and determined that the Book was "defamatory toward Mr. Montgomery and/or contained classified government information that could subject them to civil and criminal liability."  See Movant's Br. at 4.

First, what S&S thought or believed about Mr. Risen's manuscript is completely irrelevant and non-material to whether statements ultimately published in the Book are actionable defamation, or whether Houghton Mifflin and/or Mr. Risen had the subjective intent to publish knowing falsehoods.[8]  Movant's conclusion to the contrary -- that "the issue of the refusal to publish Defendant Risen's manuscript goes to the core of whether the subject book is defamatory, and thus invokes constitutional protections" (Movant's Br. at 11)  -- shows a startling ignorance of defamation law.  See, e.g., Celle v. Filipino Reporter Enterprises Inc., 209 F.3d 163, 177 (2d Cir. 2000).

Second, even if the documents and testimony sought were highly material and relevant, they are not "critical or necessary" because in order to be classified as such, the movant "must convince the court that the claim 'virtually rises or falls with the admission or exclusion of the proffered evidence.'"  Flynn v. NYP Holdings, Inc., 235 A.D.2d 907, 908 (3rd Dep't. 1997).  See

---

likely relevance to a significant issue in the case" and (2) "are not reasonably obtainable from other available sources."  Id.  As discussed, Plaintiff has not done either here.

[8] Defendants' Motion to Dismiss (Docket of Civ. Action 15-cv-20782 (S.D. Fla.), Doc 52) lists some of the many hurdles faced by Movant, including overcoming assertion of the fair report privilege and then establishing actionable defamation in the face of a truth defense.  Defendants assert Plaintiff must demonstrate actual malice by clear and convincing evidence, Plaintiff is insistent that he is not subject to this incredibly high constitutional threshold, but that the information allegedly held by S&S is crucial to obtaining punitive damages.  See Movant's Br. at 4.

also IMO American Broadcasting Companies, Inc., 189 Misc.2d 805 (2001) ("The test is not merely that the material be helpful or probative, but whether defense of the action may be presented without it.")  Since Movant cannot even show that S&S's information goes to the veracity of the Book, it doesn't matter; there is no allegation that S&S is the publisher or could have been involved in the decision to publish.  Plaintiff's farfetched theory also does not take into account edits that Houghton Mifflin likely made to the manuscript.

Perhaps most telling – and conclusive proof that the testimony and documents the subpoenas seek cannot be "critical and relevant" – is the fact that in a recent motion to extend discovery deadlines filed by Plaintiff in the Libel Action, Plaintiff makes no mention whatsoever of the subpoenas as reason for requiring an extension of discovery, instead solely referencing the FBI's ongoing analysis of certain materials.  See Rosen Decl., Ex. F.

Even if Movant's spurious arguments were sufficient to meet his burden to show that the materials sought are not only highly material and relevant, but necessary for his case, Movant has still failed to detail his efforts to obtain the information from an alternative source.  See Flynn, 235 A.D.2d 907 ("Other than stating that the materials are not otherwise available, plaintiff has not detailed any efforts made to obtain the requested documents or the information contained therein.").  In fact, Movant proffers no attempt to seek readily available alternative sources for the information he seeks, chief among which is Defendant Risen himself who did not assert the reporters' privilege as to Montgomery or chapter two of the Book.  See, e.g., In re Application of Steven Emerson, 303 A.D.2d 229 (1st Dep't. 2003) (editor should not have been subpoenaed when reporter defendant in libel suit was the obvious alternative source); In re Gibson, 106 A.D.3d 424 (1st Dep't. 2013) (reporter should not have been subpoenaed when it does not appear plaintiff even attempted to find alternative sources, which appear to exist).

For the reasons set forth above, this Court should quash the subpoenas based on absolute and qualified privileges provided by New York's Shield Law.

**IV.   PLAINTIFF'S REQUESTS ARE FATALLY OVERBROAD AND NEITHER S&S NOR MS. PAINTON SHOULD BE COMPELLED TO RESPOND.**

Fed. R. Civ. P. 26(b)(1) permits discovery regarding any nonprivileged matter that is "relevant" to any party's claim or defense.  Though "relevant" is interpreted broadly, it is not limitless; "[t]o be relevant, the request for information must be 'germane' to the subject matter of the claim, defenses or counterclaims".  See Lugosch v. Congel, 218 F.R.D. 41, 45 (N.D.N.Y. 2003).  Accordingly, parties should not be permitted to "roam in the shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that [it] might conceivably become so."  Id. (quoting In re Sur. Ass'n of Am., 388 F.2d 412, 414 (2d Cir. 1967)).  Stated differently, "**courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition'**".  Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (emphasis added).  See also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC, 496 B.R. 713, 724 (Bankr. S.D.N.Y. 2013) (explaining that "discovery, like all matters of procedure, has ultimate and necessary boundaries", and that discovery requests should not be "based on pure speculation or conjecture") (internal quotations and citations omitted).  A motion to compel discovery should therefore be denied where the plaintiff's request is "merely a fishing expedition" and where the plaintiff has not produced "any specific facts whatsoever to support its allegation" nor made any "showing that the discovery sought is in any way relevant or necessary".  See Spina v. Our Lady of Mercy Med. Ctr., No. 97 CIV 4661 (RCC), 2001 WL 630481, at *2-3 (S.D.N.Y. June 7, 2001).  This is particularly true where a non-party is involved, as the federal discovery rules, specifically Rule 45, recognize that it is a "central goal" to "prevent nonparty witnesses from being subjected to excessive discovery burdens."  Price Waterhouse, 182 F.R.D. at 63 (citation omitted).

In recognition of these qualifications on discovery, Fed. R. Civ. P. 26(b)(2)(C)[9] requires courts to limit discovery where: (1) **"**the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."   Similarly, in the context of a subpoena, Fed. R. Civ. P. 45(d)(3)(A) requires a court to quash or modify same where the subpoena "subjects a person to undue burden."   Important here, "[i]n assessing these considerations, **special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation**." Cohen, 255 F.R.D. at 117 (internal quotation and citation omitted).

In this case, the S&S Non-parties would be subjected to excessive discovery burdens if required to comply with Plaintiff's subpoenas.[10]   First, the documents sought by Plaintiff are not maintained in an organized central document repository system; rather, each department (and in some cases individuals) within the company controls its own files.   See Affidavit of Tracy Woelfel ("Woelfel Aff."), attached to Rosen Decl. as Ex. G, at ¶ 6.   Accordingly, in order to search for the

---

[9] As of December 1, 2015, amendments to Fed. R. Civ. P. 26 (b) (1) authorize only proportional discovery of matters relevant to a party's claim or defense: "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden and expense of the proposed discovery outweighs the likely benefit."  (Emphasis added)

[10] As a threshold matter, the document requests directed to Ms. Painton are more properly directed to S&S, as the documents sought were created in the course of Ms. Painton's official capacity as an employee of S&S and therefore are in the possession of S&S, not Ms. Painton individually. Thus, the subpoena directed to Ms. Painton should be quashed on this ground alone.

documents sought by Plaintiff, the S&S Non-parties would be required to canvass employees within multiple different departments to determine if they possess responsive documents.  Id. at ¶ 7.  For example, any given book publishing project will involve employees from Editorial, Publicity, Marketing, Copy-Editing, Managing Editorial, Design, Contracts, Accounting, Legal or other departments.  Id.

Second, employees in those departments would likely be required to conduct sweeping searches of hard copy documents in their files and then the information technology department of S&S's parent, CBS Corporation, would need to search electronic files, which may not be maintained under specific categories and, even if categorized for their own purposes, are not likely to be organized in a manner that would readily allow identification of which documents might be responsive to each of the 23 broad categories in the subpoenas.  Id. at ¶ 8.  Thus, identifying for instance "any and all documents that refer or relate in any way to Dennis Montgomery" or "any and all documents that refer or relate to payments between Houghton Mifflin and S&S [without any time parameter]" could be virtually impossible.  Id. at ¶ 9.  Indeed, it is possible that numerous book publishing projects may in some tangential, irrelevant way have mentioned Plaintiff or Houghton Mifflin may have entered into any number of agreements with S&S over the years, such as those relating to subsidiary rights, none of which have anything to do with the publication of Pay Any Price.  Id.

Third, the CBS data sweep would collect data from potentially dozens, if not hundreds, of employees' computers and e-mail accounts.  Id. at ¶ 10.  CBS would then need to perform various key word searches on that data in an effort to ascertain what subset of information might be responsive to the twenty-three sweeping categories in the subpoenas, and then S&S's Legal Department and/or outside counsel would need to review such subset of information to see if it is, in fact, responsive to the subpoena.  Id.

Fourth, many of the documents sought seek confidential, proprietary and commercially sensitive information such as the terms of contracts, payments, internal policies, and unpublished book projects. Id. at ¶ 11.  S&S's Legal Department and/or outside counsel would then be required to expend substantial time reviewing the documents retrieved to identify any such documents.  Id. Similarly, given the involvement of S&S's Legal Department in various stages of book publishing projects, S&S's Legal Department and/or outside counsel would be required to review the entirety of the documents retrieved for attorney-client and attorney work-product privilege.  Id. at ¶ 12. S&S's Law Department and/or outside counsel would also be required to review documents retrieved for privilege on the basis of the New York's Shield Law or other applicable laws.  Id.

It is likely that this search, retrieval and review process could take weeks and involve the active participation of numerous employees at S&S and CBS, as well as cause substantial inconvenience and expense.  Id. at ¶¶ 4, 13.

There is no basis whatsoever to subject the S&S Non-parties to this excessive discovery burden in light of the fact that Plaintiff improperly served the subpoenas and has failed to articulate how the requested documents are relevant to whether Mr. Risen's Book is defamatory towards Plaintiff.  Instead, Plaintiff has woven a fantastical theory that S&S decided not to publish the Book because it "saw and determined that The Book was defamatory toward Mr. Montgomery and/or contained classified government information that could subject them to civil and criminal liability, if not prosecution."  See Movant's Br. at 4.  This theory, cobbled together by Plaintiff after purportedly learning that "The Book originally was to be published by Defendant Risen's longtime publisher, Simon & Schuster, and edited and reviewed by…Priscilla Painton" defies credulity.  The simple fact that a company ultimately decided not to publish a book is not a basis to contend that that company "found the manuscript to be written with actual malice and defamation" (see id., pg. 5) or has documents that are "highly relevant to the underlying action"

22

(see id., pg. 2).  Plaintiff's argument to the contrary is nothing more than rank speculation that cannot show that the documents sought are in any way relevant, let alone sufficiently relevant to outweigh the burden production would impose on the S&S Non-parties.  See Night Hawk Ltd. v. Briarpatch Ltd., L.P., No. 03 CIV.1382 RWS, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003).

Moreover, the subpoenas' requests ("Reqs.") are facially overbroad.  Even if Plaintiff's far-fetched theory was to be believed, the requests reach far beyond the Book and the alleged defamation at issue.  For example, eleven of Plaintiff's document requests are in no way limited to documents related to Plaintiff, the Book or the alleged defamation, but instead seek "any and all documents that refer or relate" to a broad spectrum of contracts, communications and payments, without any date restriction.  See Reqs. 6, 8-12, 14, 17-19, 21.  It strains the imagination to believe that these requested documents could be even tangentially relevant to the Book or to Plaintiff, let alone to Plaintiff's Libel Action.  Indeed, S&S is a publishing company that has engaged in numerous contracts, communications and payments in the course of its business relationships; Plaintiff is not entitled to engage in a fishing expedition of these relationships in the hopes of discovering some extraneous piece of information to support his contrived theory.

Moreover, even those document requests that are limited to Plaintiff go far beyond the Book or the Libel Action, instead seeking "Any and all documents that refer or relate in any way" to Dennis Montgomery (Req. 1), communications to and from James Risen concerning Dennis Montgomery (Req. 2), and communications with Houghton Mifflin concerning Dennis Montgomery (Reqs. 3-4).  Again, S&S is a publishing company with numerous book projects, both published and unpublished, which may – in some tangential fashion – "refer or relate" to Plaintiff or communications concerning Plaintiff.  This does not mean, however, that S&S and Ms. Painton should be required to search the entirety of their hard copy and electronic files to find each and every mention of Plaintiff's name – that is not relevancy, it is a fishing expedition.

The overbreadth of Plaintiff's subpoenas is further evidenced by the fact Plaintiff seeks documents that could not possibly even be in the possession of S&S or Ms. Painton, such as "contracts by and between Tina Bennett and Houghton Mifflin" (Reqs. 15-16), "documents that refer or relate in any way to Tina Bennett deciding to contact Houghton Mifflin …" (Req. 20), "documents that refer or relate in any way to Bruce Nichols concerning Pay Any Price" (Req. 22), and "copyrights and other intellectual property rights concerning Pay Any Price" (Req. 23).

Finally, the few requests that are limited to the Book are still too overbroad to survive.  <u>See</u> Reqs. 5, 7 and 13.  For example, Plaintiff seeks "Any and all documents that refer or relate in any way to the preliminary measures [S&S] took in order to publish Pay Any Price."  (Req. 13).  The "preliminary measures" would include a vast number of documents from various employees regarding S&S's internal procedures and policies regarding the acquisition and editorial processes. This is clearly overbroad in light of the reason for Plaintiff's subpoena -- purportedly to obtain proof that S&S and Ms. Painton believed the manuscript to be defamatory towards Plaintiff. Courts in the Southern District of New York have long recognized that "[a] document request is unreasonable when 'it is out of proportion to the end sought, as when the person served is required to fetch all his books at once to an exploratory investigation whose purposes and limits can be determined only as it proceeds.'"  <u>United States v. Int'l Bus. Machines Corp.</u>, 83 F.R.D. 97, 106-07 (S.D.N.Y. 1979) (<u>quoting</u> <u>McMann v. SEC</u>, 87 F.2d 377, 379 (2d Cir.) (L. Hand, J.), <u>cert. denied</u>, 301 U.S. 684 (1937)).   And, in any event, the testimony and information sought by these few requests is protected by New York Shield Law's qualified privilege.  <u>See</u> Section III, <u>supra</u>.

In the end, Plaintiff has failed to establish that the requested testimony or documents may be compelled, let alone even survive S&S and Ms. Painton's Motion to Quash.

## V.     THE S&S NON-PARTIES OPPOSE REMOTE CONFERENCING OF ANY DEPOSITION.

For the reasons set forth in the October 30, 2015 letter from Defendants' counsel objecting to remote conferencing of any depositions of non-parties (see Movant's Ex. 11), should this Court order the S&S Non-parties' depositions be taken, the S&S Non-parties join in that objection for the reasons stated in the October 30, 2015  letter.


## CONCLUSION

For the reasons set forth herein, non-parties Simon & Schuster, Inc. and Priscilla Painton respectfully request that the Motion to Compel filed by Dennis Montgomery be denied in its entirety, and their Motion to Quash two improperly served subpoenas, seeking privileged and/or overbroad and unduly burdensome testimony and documents, be granted.


McCUSKER, ANSELMI, ROSEN &
 CARVELLI, P.C.


By: _____/s/ Bruce S. Rosen_____
      Bruce S. Rosen, Esq.
      Sarah Fehm Stewart, Esq.
      805 Third Avenue, 12th Floor
      New York, NY 10022
      (T) (212) 308-0070
      (F) (917) 677-8978
      Attorneys for Non-Parties
      Simon & Schuster, Inc. and Priscilla Painton

Dated:  November 19, 2015