UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
DENNIS L. MONTGOMERY,                     :     No. 1:15-mc-00363-P1
                                          :
                 Plaintiff,               :         ECF Case
                                          :
        v.                                :
                                          :
SIMON & SCHUSTER,                         :     **<u>Oral Argument Requested</u>**
                                          :
and                                       :
                                          :
PRISCILLA PAINTON,                        :
                                          :
and                                       :
                                          :
TINA BENNETT,                             :
                                          :
                 Defendants.              :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANT TINA BENNETT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFF'S EMERGENCY MOTION TO COMPEL COMPLIANCE WITH
A SUBPOENA AND IN SUPPORT OF HER CROSS-MOTION TO
QUASH OR MODIFY THAT SUBPOENA**


MARINO, TORTORELLA & BOYLE, P.C.
437 Southern Boulevard
Chatham, New Jersey 07928-1488
(973) 824-9300
*Attorneys for Defendant Tina Bennett*


On the Brief:
        Kevin H. Marino
        John A. Boyle

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

LEGAL ARGUMENT .................................................................................................................. 4

I.      THE COURT SHOULD DECLINE TO ENFORCE THE SUBPOENA
        BECAUSE MONTGOMERY DID NOT PROPERLY SERVE IT. ................................. 4

II.     THE COURT SHOULD QUASH OR MODIFY THE SUBPOENA BECAUSE
        IT SEEKS IRRELEVANT, DUPLICATIVE, UNNECESSARY DISCOVERY
        FROM A NON-PARTY AND IS HENCE UNDULY BURDENSOME. ......................... 9

        A.  The Court Should Quash The Subpoena Because The Testimony And
            Documents Sought Are Not Relevant To Montgomery's Claims. ............................ 10

        B.  In The Alternative, The Court Should Limit The Subpoena's Scope To
            Documents And Testimony Related To S&S's Reasons For Not Publishing
            Risen's Book. ............................................................................................................ 12

III.    THE COURT SHOULD DENY MONTGOMERY'S REQUEST TO DEPOSE
        BENNETT BY VIDEOCONFERENCE. ....................................................................... 15

CONCLUSION ........................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**

Advani Enters. v. Underwriters at Lloyds,
   No. 95-cv-4864, 2000 U.S. Dist. LEXIS 15421 (S.D.N.Y. Oct 18, 2002)............................. 15

Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams.,
   262 F.R.D. 293 (S.D.N.Y. 2009) ............................................................................................ 4

Cadlerock Joint Venture, L.P. v. Adon Fruits & Vegetables Inc.,
   No. 09-cv-2507, 2010 U.S. Dist. LEXIS 65978 (E.D.N.Y. Apr. 10, 2010) ................. 5, 6, 7, 8

Cartier v. Geneve Collections, Inc.,
   No 07-cv-0201, 2008 U.S. Dist. LEXIS 14714 (E.D.N.Y. Feb. 27, 2008) ............................. 5

Cohen v. City of New York,
   255 F.R.D. 110 (S.D.N.Y. 2008) ......................................................................................... 10

Collens v. City of New York,
   222 F.R.D. 249 (S.D.N.Y. 2004) ......................................................................................... 13

Concord Boat Corp. v. Brunswick Corp.,
   169 F.R.D. 44 (S.D.N.Y. 1996) ............................................................................... 10, 12, 15

Fears v. Wilhelmina Model Agency, Inc.,
   No. 02-cv-4911, 2004 U.S. Dist. LEXIS 5575 (S.D.N.Y. April 1, 2004) ............................. 10

Fireman's Fund Ins. Co. v. Zoufaly,
   No. 93-cv-1890, 1994 U.S. Dist. LEXIS 15055 (S.D.N.Y. Oct. 21, 1994)............................ 15

Haber v. ASN 50th Street, LLC,
   272 F.R.D. 377 (S.D.N.Y. 2011) ........................................................................................... 5

JPMorgan Chase Bank, N.A. v. IDW Grp., LLC,
   No. 08-cv-9116, 2009 U.S. Dist. LEXIS 39714 (S.D.N.Y. May 11, 2009) ............................ 5

Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP,
   No. 03-cv-5560, 2008 U.S. Dist. LEXIS 77018 (S.D.N.Y. Oct. 2, 2008).......................... 9, 10

Lapin v. Goldman,
   No. 04-cv-2236, 2009 U.S. Dist. LEXIS 87788 (S.D.N.Y. Sept. 9, 2009) ............................. 5

Leser v. U.S. Bank Nat'l Ass'n,
   No. 09-cv-2362, 2011 U.S. Dist. LEXIS 28127 (E.D.N.Y. Mar. 18, 2011)............................ 5

Medical Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC,
   No. 06-cv-7764, 2008 U.S. Dist. LEXIS 62376 (S.D.N.Y. Aug. 15, 2008)............................. 8

Mercado v. Transoceanic Cable Ship Co.,
   No. 88-cv-5335; 1989 U.S. Dist. LEXIS 8484 (E.D. Pa. July 25, 1989) .......................... 15, 16

Travelers Indemnity Co. v. Metropolitan Life Insurance Co.,
   228 F.R.D. 111 (D. Conn. 2005) ......................................................................................... 10

<u>Tube City IMS, LLC v. Anza Capital Partners, LLC</u>,
  No. 14-cv-1783, 2014 U.S. Dist. LEXIS 160667 (S.D.N.Y. Nov. 14, 2014)....................5, 6, 7

<u>Ultradent Prods., Inc. v. Hayman</u>,
  No. M8-85, 2002 U.S. Dist. LEXIS 18000 (S.D.N.Y. Sept. 24, 2002)..................................5, 6

<u>United States v. Int'l Bus. Mach Corp.</u>,
  83 F.R.D. 97 (S.D.N.Y. 1979) ...............................................................................................10

**<u>Rules</u>**

Fed. R. Civ. P. 30(b)(4)...........................................................................................................15

Fed. R. Civ. P. 30(b)(6).....................................................................................................16, 17

Fed. R. Civ. P. 45.....................................................................................................................4

Fed. R. Civ. P. 45(b)(1)......................................................................................................4, 8, 9

Fed. R. Civ. P. 45(d)(2)..............................................................................................................9

Fed. R. Civ. P. 45(d)(3)..............................................................................................................9

N.Y. CPLR § 308.......................................................................................................................4

## <u>PRELIMINARY STATEMENT</u>

Defendant Tina Bennett ("Bennett") respectfully submits this memorandum of law and the accompanying Declarations of Kevin H. Marino ("Marino Decl.") and Svetlana Katz ("Katz Decl.") in opposition to the motion of Plaintiff, Dennis L. Montgomery ("Montgomery"), to compel Bennett to comply with a subpoena to take her deposition by videoconference (the "Subpoena") in a libel action pending in the Southern District of Florida, <u>Montgomery v. Risen, et al.</u>, 15-cv-20782, and in support of Bennett's cross-motion to quash or modify the Subpoena.

In his libel action, Montgomery sued James Risen ("Risen"), a noted author and Pulitzer-Prize winning New York Times reporter, and his publisher, Houghton Mifflin Harcourt Company ("Houghton Mifflin"), claiming that he was defamed by statements made in Risen's 2014 book, <u>Pay Any Price: Greed, Power and Endless War</u>. Bennett is Risen's literary agent, and Montgomery contends that she has evidence relevant to his libel action. His motion also seeks to compel, pursuant to nearly identical subpoenas, the depositions of Simon & Schuster ("S&S"), which at one time planned to publish <u>Pay Any Price</u>, and Priscilla Painton, the S&S editor who worked with Risen on <u>Pay Any Price</u>. Those parties (collectively, the "S&S Parties") have similarly opposed the motion.

In this motion to compel, Montgomery contends that Bennett was properly served with the Subpoena; that she waived any objection to it; that his request for her deposition is appropriate because she has information and documents that bear upon his libel action; and that he should be permitted to take her deposition by videoconference rather than traveling to New York to do so. Montgomery is wrong on all counts.

First, Bennett was not served with the Subpoena in accordance with Fed. R. Civ. P. 45 because Montgomery—who admits Bennett was not personally served with the Subpoena—did

1

not fulfill any of the three requirements for alternative means of service.  Specifically, he did not (1) initially attempt to have Bennett served personally; (2) seek prior court authorization to employ an alternative means of serving her; or (3) use an alternative means of service that both comported with due process and was reasonably calculated to ensure that Bennett received actual notice of the Subpoena.  Although Montgomery's process server claims he served the Subpoena on Bennett's assistant, the process server in fact left the Subpoena at the mailroom of William Morris Endeavor, Bennett's employer.  He also claims that he sent Bennett a copy of the Subpoena via first-class mail.  But neither delivering a subpoena to a mailroom nor sending it in the mail (assuming that occurred) is sufficient to constitute valid service.  Thus, even if Montgomery had first attempted personal service and then sought court approval before attempting to serve Bennett by alternative means—and it is undisputed that he did neither—leaving the Subpoena in the mailroom of her employer and mailing her a copy of that Subpoena would not have been valid service.

Second, beyond its defective service, the Subpoena is invalid because Montgomery has not met his burden of establishing that the wealth of information he seeks from Bennett, a non-party, is actually relevant to his claims.  As a threshold matter, Montgomery only argues that one of the twenty-three topics on which he seeks documents and testimony—specifically, the reasons S&S did not publish Pay Any Price—is relevant to his claims.  And on that subject, Montgomery (a) has already taken the depositions of individuals with personal knowledge of why the book was not published by S&S; and (b) has no basis to believe Bennett would contradict the testimony he has already elicited.  Her deposition would thus entail the taking of marginally relevant, plainly duplicative, and certainly unnecessary discovery from a non-party.  Even if the Court were inclined

to permit that deposition to proceed, it should not require Bennett to produce documents or give testimony on 22 of the 23 topics identified in the Subpoena, which are well beyond the scope of anything that might fairly be termed relevant.

Finally, Montgomery should not be permitted to conduct Bennett's deposition by videoconference because prior videoconference depositions in this case have revealed that proceeding in that fashion is unworkable and manifestly prejudicial to the witness. In those prior depositions, there was significant confusion and delay because Montgomery's counsel did not provide the court reporter with his dozens of proposed deposition exhibits in advance, instead emailing them to the deponents' counsel shortly before the deposition.[1] As a result, counsel defending the witnesses has had to organize those documents for Montgomery's counsel and perform the role typically performed by the lawyer taking the deposition, making certain the witness had the right exhibit in hand and reviewed it before the questioning could proceed, then monitoring the proceeding to make certain there was no miscommunication regarding documents between Montgomery's counsel and the witness. That is simply not the way it works. As counsel for the party seeking discovery from a non-party in a district other than the one in which he filed suit, Montgomery's attorney should be compelled to appear personally in New York to conduct any deposition of Bennett that the Court may order.

For these reasons, amplified below, the Court should (a) deny Montgomery's motion to compel Bennett's deposition, and reject his waiver argument because the Subpoena was not

---

[1] Bennett (a) joins in the arguments made by Houghton Mifflin and the S&S Parties in opposition to Montgomery's motion to compel compliance with the subpoenas and in their cross-motions to quash those subpoenas, including the S&S Parties' argument that the Court should quash the subpoenas based on the absolute and qualified privileges provided by New York's Shield Law; and (b) adopts the Factual Background in the S&S Parties' Memorandum of Law (Dkt. # 5.).

properly served on Bennett; (b) quash the Subpoena as irrelevant or, in the alternative, limit its scope to the reasons why S&S did not ultimately publish Pay Any Price; and (d) reject Montgomery's request to conduct Bennett's deposition by videoconference and compel him to take any such deposition in person.

## LEGAL ARGUMENT

### I.  THE COURT SHOULD DECLINE TO ENFORCE THE SUBPOENA BECAUSE MONTGOMERY DID NOT PROPERLY SERVE IT.

Fed. R. Civ. P. 45(b)(1) requires that a subpoena be served by "delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law."[2]  Montgomery does not claim to have served Bennett personally, or even to have attempted to do so.  Rather, he claims that his process server, Raymond Hollingsworth ("Hollingsworth"), delivered the Subpoena to Bennett's administrative assistant, Svetlana Katz ("Katz").  (Moving Br. at 7.)  Katz disputes that contention.  (Katz Decl., ¶¶ 2-3.)

In recent years, courts in this district have relaxed the requirement that a subpoena must, in every instance, be personally served on the witness, and have instead "interpret[ed] Rule 45's personal service requirement liberally where the type of service used 'was calculated to provide timely actual notice.'"  Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Ams., 262 F.R.D. 293, 304 (S.D.N.Y. 2009).  Nonetheless, the use of "alternative means of service" is subject to three critical requirements.  First, "alternative methods of service are available only after 'the [serving

_____

[2] Montgomery incorrectly contends that service of the Subpoena is governed by, and was proper pursuant to, N.Y. CPLR § 308.  (Moving Br. at 7.)  That provision of the New York Civil Practice Law and Rules, which governs service of a summons and complaint in a New York state court civil action, is entirely irrelevant here.  On this motion, Montgomery is seeking to enforce a federal subpoena issued by the United States District Court for the Southern District of Florida; service of that federal subpoena, like enforcement and compliance with it, is governed by Fed. R. Civ. P. 45.

party] diligently . . . attempted to effectuate personal service'" on the witness.  Cadlerock Joint Venture, L.P. v. Adon Fruits & Vegetables Inc., No. 09-cv-2507, 2010 U.S. Dist. LEXIS 65978, at *10 (E.D.N.Y. Apr. 10, 2010) (quoting Cartier v. Geneve Collections, Inc., No 07-cv-0201, 2008 U.S. Dist. LEXIS 14714, at *1 (E.D.N.Y. Feb. 27, 2008) ("courts [have] sanctioned alternative means of service only after the plaintiff had diligently attempted to effectuate personal service"); see also Tube City IMS, LLC v. Anza Capital Partners, LLC, No. 14-cv-1783, 2014 U.S. Dist. LEXIS 160667, at *2-3 (S.D.N.Y. Nov. 14, 2014) (multiple attempts at personal service failed); JPMorgan Chase Bank, N.A. v. IDW Grp., LLC, No. 08-cv-9116, 2009 U.S. Dist. LEXIS 39714, at *7-8 (S.D.N.Y. May 11, 2009) (same); Ultradent Prods., Inc. v. Hayman, No. M8-85, 2002 U.S. Dist. LEXIS 18000, at *12 (S.D.N.Y. Sept. 24, 2002) (same).  In fact, at least one court has held—relying on Cadlerock and Cartier—that the witness must be aware of the attempts at personal service for an alternative means to be warranted.  Leser v. U.S. Bank Nat'l Ass'n, No. 09-cv-2362, 2011 U.S. Dist. LEXIS 28127 (E.D.N.Y. Mar. 18, 2011).

Second, leave to employ alternative means of service first "must be authorized by a court" to ensure that the means employed are designed to provide the non-party with adequate notice. Haber v. ASN 50th Street, LLC, 272 F.R.D. 377, 382 (S.D.N.Y. 2011) (citation and internal quotation marks omitted) (emphasis added); see also Lapin v. Goldman, No. 04-cv-2236, 2009 U.S. Dist. LEXIS 87788, at *4-5 (S.D.N.Y. Sept. 9, 2009) ("the case law is clear that any alternative service must be authorized by a court order").  Leave to employ alternative means of service is typically only granted after multiple attempts at personal service.  For example, there were six failed attempts at personal service in Tube City IMS, 2014 U.S. Dist. LEXIS 160667, at *2-3, and nine failed attempts in JPMorgan Chase, 2009 U.S. Dist. LEXIS 39714, at *7-8

(approving alternative means of service after nine attempts at personal service).  See also Ultradent

Prods., 2002 U.S. Dist. LEXIS 18000, at *12 (S.D.N.Y. Sept. 24, 2002) (two attempts at personal

service).

Third, any alternative to personal service must be "calculated to provide timely actual

notice."  Tube City IMS, 2014 U.S. Dist. LEXIS 160667, at *5.  Stated differently, "[a]ny method

of service of the subpoena has to comport with due process and be reasonably calculated under the

circumstances to provide [the witness] with both notice and an opportunity to present objections."

Cadlerock, 2010 U.S. Dist. LEXIS 65978, at *10-11 (internal citation and quotation omitted).

Here, Montgomery has not satisfied—and cannot satisfy—any of the three requirements

for alternative means of service with respect to the Subpoena.  As to the first requirement,

Montgomery does not contend, much less present evidence, that he made any attempt whatsoever

to effectuate personal service of the Subpoena on Bennett before resorting to an alternative means.

The Subpoena was not even issued until October 19, 2015 (Moving Br., Ex. 3), the day before

Hollingsworth says he served the Subpoena on Katz, in the early afternoon (1:13 p.m.) (id., Ex.

5); there was thus no time within which Hollingsworth could have attempted personal service

without success and thereafter sought court approval for alternative service.

As to the second element, Montgomery's counsel likewise does not contend that he

attempted to obtain authorization from any court to serve Bennett by alternative means.  The docket

in the underlying Florida litigation does not evince any such application.  (Marino Decl., Ex. A.)

And Montgomery does not provide any evidence, or even suggest, that he applied to this or any

other court for leave to serve Bennett by alternative means (which request, had it been made, would

surely have been denied given his failure to initially attempt personal service).   Instead,

Montgomery simply and improperly arrogated the right to serve Bennett by alternative means.

As to the third element, the alternative method of service Montgomery employed did not "comport with due process" and was not "reasonably calculated under the circumstances to provide [Bennett] with both notice and an opportunity to present objections." See Cadlerock, 2010 U.S. Dist. LEXIS 65978, at *10-11. In the Moving Brief, Montgomery contends—based on an affidavit from a process server employed by his counsel, Larry Klayman[3]—that, on October 20, 2015 at 1:13 p.m., his process server left the Subpoena with Bennett's administrative assistant, Svetlana Katz, at the office of William Morris Endeavor ("WME"), located at 11 Madison Avenue, New York, NY 10019. (Moving Br. at 7 & Ex. 5.) But according to Katz, the process server did not deliver the Subpoena to her. (Katz Decl., ¶¶ 2-3.) Rather, the Subpoena was delivered to the mailroom of WME's New York office and from there was eventually routed to Katz.[4] (Id., ¶ 3.)

But delivering a subpoena to the mailroom of company with more than 3,000 employees worldwide, (Marino Decl., Ex. B), does not satisfy due process, see Cadlerock, 2010 U.S. Dist. LEXIS 65978, at *10-11, and certainly was not "calculated to provide timely actual notice" of the Subpoena, see Tube City IMS, 2014 U.S. Dist. LEXIS 160667, at *5. Stated simply, Montgomery could have had no idea as to when—or even if—the Subpoena would reach Bennett.

Montgomery also claims that his process server mailed a copy of the Subpoena to Bennett

---

[3] As the S&S Parties explain in their Brief (pg. 2 n.1), though Klayman is Montgomery's counsel in the underlying Florida action, he has had his *pro hac vice* privileges revoked in this District and is required by court order to attach to any future *pro hac vice* application a decision by then District Court Judge Dennis Chin explaining the reasons for that revocation. As a result, a different lawyer, who appears to be affiliated with Klayman's law firm, filed the instant action. Nonetheless, Klayman has been involved in all aspects of the motion and the Subpoena it seeks to enforce.

[4] The S&S Parties raise a similar challenge to the assertions of Montgomery's process server with respect to his alleged service of the subpoenas upon them. (Dkt. #5 at 7-8.)

via first class mail.  (Moving Br. at 7.)  The only support for that assertion is the Affidavit of Hollingsworth—the process server who also claims he served Katz with the Subpoena—which does not indicate where and to whom the Subpoena was mailed.  Assuming arguendo the Subpoena was mailed, service of a subpoena by first-class mail is typically not regarded as an alternative means of service reasonably calculated to ensure actual notice to the subpoenaed witness, as the court made clear in Cadlerock, 2010 U.S. Dist. LEXIS 65978, at *12.  In Cadlerock, the plaintiff attempted to deliver a subpoena to a defendant who had defaulted after making no appearance. Following four attempts at personal service, all of which failed, the plaintiff affixed the subpoena to the door of the defendant's residence and also sent it by first-class mail.  The court determined that first-class mail was not an acceptable means of delivery under Fed. R. Civ. P. 45(b)(1) because, unlike certified mail, it was not reasonably designed to ensure actual receipt.  Cadlerock, 2010 U.S. Dist. LEXIS 65978, at *12.  Critical to the court's determination was the plaintiff's failure to proffer any justification for why it could not have sent the subpoena by certified mail because nothing "suggest[ed] that the cost associated with certified mail would have been prohibitive or even burdensome."[5]  Id.  Likewise here—especially given that Montgomery made

---

[5] Those few cases that have found service by first-class mail sufficient have done so under significantly different circumstances.  For example, in Medical Diagnostic Imaging, PLLC v. CareCore Nat'l, LLC, No. 06-cv-7764, 2008 U.S. Dist. LEXIS 62376 (S.D.N.Y. Aug. 15, 2008), the defendants attempted personal service and the witness affirmatively avoided it.  During one attempt, the defendants left the subpoena at the witness's place of business with the front desk clerk—who only accepted the subpoena after contacting the witness and obtaining authorization to do so—and followed up with a letter, to which the witness responded by email (stating he would not appear).  The court only permitted the use of first-class mail after the witness's repeated efforts to avoid personal service and because adequate notice was already established given the witness's communication with the defendants' attorney.  Id. at *10.  The court, to which the defendants applied on two occasions for assistance with service, refused to permit "a witness to avoid appearing for his deposition when he acknowledge[d] that he ha[d] actual knowledge" of it.  Id. at *11.

no attempt to personally serve Bennett or obtain approval to serve her through alternative means—service by regular mail should not be permitted.

Perhaps mindful of the Subpoena's deficiencies, Montgomery argues that Bennett waived her right to object to it because she failed to timely serve objections thereto.  (Moving Br. at 2.) Though it is not mentioned in the Moving Brief, Montgomery presumably grounds his argument on Rule 45(d)(2)(B), which provides, in pertinent part, that objections to a subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  But because Montgomery never properly served Bennett with the Subpoena, her time to object never began to run.  As a result, Bennett did not waive her objections to the Subpoena.

In sum, Montgomery failed (a) to serve the Subpoena on Bennett personally; or (b) to satisfy any of the three requirements for use of an alternative means of service.  He thus failed to effectuate proper service of the Subpoena, and her time to object to it never began to run.  Now that he has moved to compel compliance with the Subpoena and Bennett has met that motion with evidence that the Subpoena was not properly served, his motion to compel should be denied.

## II.   THE COURT SHOULD QUASH OR MODIFY THE SUBPOENA BECAUSE IT SEEKS IRRELEVANT, DUPLICATIVE, UNNECESSARY DISCOVERY FROM A NON-PARTY AND IS HENCE UNDULY BURDENSOME.

Pursuant to Rule 45(d)(3)(A)(iv), a court "must quash or modify a subpoena that . . . subjects a person to undue burden."  In response to a motion to quash or modify, "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceeding."  Kingsway Fin. Servs. v. Pricewaterhouse-Coopers LLP, No. 03-cv-5560, 2008 U.S. Dist. LEXIS 77018, at *13 (S.D.N.Y. Oct. 2, 2008). Further, "[t]he determination of whether a subpoena is unduly burdensome turns, in part, on why the requested material is relevant."  Id. at *14 (citing United States v. Int'l Bus. Mach Corp., 83

9

F.R.D. 97, 104 (S.D.N.Y. 1979) (in evaluating a motion to quash, a court should consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.").  In fact, "[t]o the extent a subpoena sweepingly pursues material with little apparent or likely relevance to the subject matter it runs the greater risk of being found overbroad and unreasonable."  Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 50 (S.D.N.Y. 1996).

Moreover, "'special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation.'"  Cohen v. City of New York, 255 F.R.D. 110, 117 (S.D.N.Y. 2008) (quoting Travelers Indemnity Co. v. Metropolitan Life Insurance Co., 228 F.R.D. 111, 113 (D. Conn. 2005)).  "The Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty.'"  Id. (quoting Fears v. Wilhelmina Model Agency, Inc., No. 02-cv-4911, 2004 U.S. Dist. LEXIS 5575, at *2 (S.D.N.Y. April 1, 2004)).

### A. The Court Should Quash The Subpoena Because The Testimony And Documents Sought Are Not Relevant To Montgomery's Claims.

As to his threshold relevance burden, Montgomery fails to establish that the information sought by the Subpoena is relevant and material to his allegations and claims.  See Kingsway Fin. Servs., 2008 U.S. Dist. LEXIS 77018, at *13.  To the contrary, the Moving Brief effectively concedes that, with one possible exception (addressed below), none of the information sought by the Subpoena is relevant.  Specifically, Montgomery argues that Bennett has knowledge of a single topic he contends is relevant to his claims: "the reasons why S&S decided not to publish Pay Any Price."  (Moving Br. at 4.)   Nevertheless, Montgomery demands in the Subpoena twenty-three different categories of documents and testimony, only one of which (Request No. 5) seeks

"documents that refer or relate in any way to the decision not to publish <u>Pay Any Price</u>, by James Risen."  (Moving Br., Ex. 3.)  Having made no attempt to establish that any documents beyond those sought by Request No. 5 are relevant to his claims, Montgomery has conceded that which is clear from a reading of the Subpoena: the other documents sought from Bennett have no possible relevance to his claims.

Further, a review of the record establishes that the actual reasons S&S did not publish Risen's book are both well known to Montgomery and irrelevant to his claims.  Montgomery contends that S&S's reasons are relevant because they "will likely show that [the S&S Parties] rejected publication because [they] saw and determined that The Book was defamatory toward Mr. Montgomery and/or contained classified government information that could subject them to civil and criminal liability, if not prosecution."  (Moving Br. at 4.)  But as the S&S Parties' brief demonstrates, the deposition testimony of Bruce Nichols—who was Houghton Mifflin's editor for <u>Pay Any Price</u> and previously worked at S&S, where he was the editor of Risen's earlier book— refutes that contention.  (Dkt. #5 at 5.)  Specifically, Nichols testified that Bennett approached him when Risen's "relationship with [S&S] was beginning to break down," (Moving Br., Ex. 8 at 23:17-18); that Risen and S&S could not agree "on how to structure [the book] or when to publish it," (<u>id.</u> at 28:16-19); and "[t]hat's why <u>Pay Any Price</u> became available to Houghton Mifflin," (<u>Id.</u> at 28:19-20).  Thus, the deposition testimony already available to Montgomery makes clear that the actual reasons S&S did not publish <u>Pay Any Price</u>—the only subject on which Montgomery claims Bennett has pertinent knowledge—have nothing to do with his claims.

As a result, Montgomery has not established, as he must, that the documents and testimony sought by the Subpoena are relevant to his claims.  Accordingly, the Subpoena is oppressive and

unduly burdensome.  See Concord Boat, 169 F.R.D. at 50 (a subpoena that "sweepingly pursues material with little apparent or likely relevance" is more likely to be "overbroad and unreasonable").  The Court should thus quash the Subpoena in its entirety.

**B.     In The Alternative, The Court Should Limit The Subpoena's Scope To Documents And Testimony Related To S&S's Reasons For Not Publishing Risen's Book.**

Even if the Court were inclined to permit Montgomery to depose Bennett on the narrow and previously explained reasons why S&S did not ultimately publish Pay Any Price, it should limit the Subpoena's scope to documents and testimony relating to those reasons (Request No. 5 of the Subpoena).  The twenty-two other categories of documents and testimony demanded by Montgomery simply have no conceivable relevance to his claims and are thus overbroad, unduly burdensome and, in many instances, duplicative.

Indeed, several of the Subpoena's demands plainly have nothing to do with the reasons S&S did not publish Risen's book and could not possibly have relevance to Montgomery's claims. For example, the Subpoena seeks documents relating to any contracts between Bennett and S&S, Houghton Mifflin Harcourt Company or Houghton Mifflin Harcourt Publishing Company, respectively.  (Request Nos. 14, 15, 16 (Moving Br., Ex. 3.)  The Subpoena also seeks documents relating to any contracts between S&S and Risen (Request No. 6), any payments made by Houghton Mifflin to S&S (Request No. 12), and copyrights and other intellectual property rights concerning Risen's book (Request No. 23).  That these categories of documents have nothing to do with the only subject on which Bennett may possess arguably relevant knowledge (or, for that matter, Montgomery's claims in general) requires little explanation.  Indeed, neither (a) contracts between Bennett and the Houghton Mifflin companies or S&S; nor (b) contracts between Risen and S&S, could possibly have anything to do with the reasons S&S did not publish the book or

otherwise bear on Montgomery's claims.[6]   The same can be said for payments from Houghton

Mifflin to S&S and the intellectual property rights for Risen's book.   Montgomery's request for

these irrelevant documents is a classic fishing expedition and should be rejected as such.   See

Collens v. City of New York, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) (holding that "courts should

not grant discovery requests based on pure speculation that amounts to nothing more than a fishing

expedition").

        Further, sixteen of the Subpoena's document requests are simultaneously duplicative and

overbroad (and thus unduly burdensome) in that they seek some of the same documents sought by

Request No. 5 (which, again, asks for documents related to S&S's decision not to publish Risen's

book), while also seeking other irrelevant documents.[7]   For example, Request No. 8 seeks all

---

[6] While these demands would not yield any relevant information, they would very likely result in the production of confidential and highly sensitive business information concerning unrelated matters.

[7] Specifically, these demands seek documents that refer or relate to "Dennis Montgomery," (No. 1); "communications to and from James Risen concerning Dennis Montgomery" (No. 2); "communications with Houghton Mifflin Harcourt Company concerning Dennis Montgomery" (No. 3); "communications with Houghton Mifflin Harcourt Publishing Company concerning Dennis Montgomery" (No. 4); "why Priscilla Painton and Simon & Schuster decided not to publish James Risen's book Pay Any Price" (No. 7); "communications between Priscilla Painton and Tina Bennett" (No. 8); "communications between Priscilla Painton and James Risen" (No. 9); "communications between James Risen and Priscilla Painton regarding confidential sources" (No. 10); "communications between James Risen and Priscilla Painton regarding classified material and/or sources" (No. 11); "the preliminary measures Simon & Schuster took in order to publish Pay Any Price" (No. 13); "communications by and between Tina Bennett and James Risen regarding Simon & Schuster" (No. 17); "communications between you and James Risen regarding Houghton Mifflin Harcourt Company" (No. 18); "communications between you and James Risen regarding Houghton Mifflin Harcourt Publishing Company" (No. 19); "Tina Bennett deciding to contact Houghton Mifflin Harcourt Company and/or Houghton Mifflin Harcourt Publishing Company for James Risen and his book Pay Any Price" (No. 20); "Tina Bennett deciding to leave negotiations at Simon & Schuster in furtherance of a contract with either Houghton Mifflin Harcourt Company or Houghton Mifflin Harcourt Publishing Company" (No. 21); and "Bruce Nichols concerning Pay Any Price" (No. 22).

"communications between Priscilla Painton and Tina Bennett."  While some communications between Painton and Bennett might relate to S&S's reasons for not publishing the book, many surely do not; since Painton is the editor of many different literary works and Bennett is the agent of many different authors, it is entirely possible that many of their communications do not even relate to Risen.  This is equally true of every other demand listed in footnote 7: some responsive documents might conceivably relate to S&S's decision not to publish Risen's book (and thus would be covered by Request No. 5), but a great many more would likely not.  To the extent these requests call for documents relating to S&S's decision not to publish the book, they are duplicative of Request No. 5.  And to the extent they call for documents that do not relate to S&S's decision, they are irrelevant, overbroad and unduly burdensome.

It would unnecessarily burden Bennett, who is not a party to the underlying lawsuit, to require her to respond to and provide testimony regarding each of Montgomery's twenty-three categories.  Most, if not all, of the demands would likely call for the production of documents that are not in Bennett's possession but rather are stored or held elsewhere at WME and maintained by various people within the agency.  For example, while Bennett might have in her personal files some documents that would qualify as relating to "Bruce Nichols concerning Pay Any Price" (Request No. 22) and "copyrights and other intellectual property rights concerning Pay Any Price" (Request No. 23), it is also possible, if not likely, that documents responsive to those demands would be stored or filed elsewhere in the agency.  To ensure that Bennett responded in full to Montgomery's demands, it would be necessary for her and WME to conduct an exhaustive and extensive search of a wide array of WME files and servers.  Given that the Subpoena's demands have no relevance to Montgomery's claims, it would be entirely inappropriate to place such an

undue and oppressive burden on a non-party.  See Concord Boat, 169 F.R.D. at 53 (quashing subpoena that would have subjected a non-party to undue burden).

For all of these reasons, if the Court does not quash the Subpoena in its entirety, it should modify the Subpoena so as to limit it to documents and testimony relating to Simon & Schuster's decision not to publish Pay Any Price.[8]

## III.   THE COURT SHOULD DENY MONTGOMERY'S REQUEST TO DEPOSE BENNETT BY VIDEOCONFERENCE.

In the event the Court elects to permit Bennett's deposition to proceed at all, it should deny Montgomery's request to depose her by videoconference.  Federal Rule of Civil Procedure 30(b)(4) provides that "[t]he parties may stipulate—or the court may on motion order—that a deposition be taken by telephone or other remote means."  While the burden rests on the party objecting to depositions by remote means "to show why the depositions should proceed in the traditional manner," Advani Enters. v. Underwriters at Lloyds, No. 95-cv-4864, 2000 U.S. Dist. LEXIS 15421, at *6 (S.D.N.Y. Oct 18, 2002), leave to conduct a deposition by teleconference or other remote means should be denied where the witness "will likely be prejudiced or the method employed would not reasonably ensure accuracy and trustworthiness," Fireman's Fund Ins. Co. v. Zoufaly, No. 93-cv-1890, 1994 U.S. Dist. LEXIS 15055, at * 1 (S.D.N.Y. Oct. 21, 1994). Prejudice may lie where the documents intended to be introduced at the deposition are voluminous and central to the case's issues.  Id. at *2.  For example, in Mercado v. Transoceanic Cable Ship Co., No. 88-cv-5335; 1989 U.S. Dist. LEXIS 8484 (E.D. Pa. July 25, 1989), the court denied leave to conduct a telephonic deposition, finding sufficient prejudice because the intended use of

---

[8] The Subpoena should further be limited in keeping with the objections lodged by the S&S Parties and Houghton Mifflin.

relevant diagrams and photographs during the deposition created "a real likelihood of confusion." Id. at *3.

Here, Bennett will suffer significant prejudice if her deposition proceeds by videoconference because (a) Montgomery clearly intends to introduce and examine her regarding numerous documents; and (b) the deposition is certain to proceed in a cumbersome and highly confusing manner. That Montgomery intends for Bennett's deposition to be a document intensive affair is clear from the Subpoena itself, which demands twenty three broad categories of documents. Bennett's production thus may well consist of a large number of communications, many of which Montgomery's counsel will introduce and use at her deposition. In his Moving Brief, Montgomery contends that the documents he seeks from Bennett are "critical" to his claims and "go to a core issue of the case." (Moving Br. at 5.) As in Mercado, extensive questioning of Bennett via videoconference about documents of such purportedly high relevance creates "a real likelihood of confusion" and significant prejudice. See 1989 U.S. Dist. LEXIS 8484 at *3.

The fear that a videoconference deposition will quickly descend into confusion, delay and prejudice is not merely abstract or theoretical in light of the manner in which Montgomery's counsel has conducted earlier videoconference depositions in this action. As an accommodation, Houghton Mifflin permitted Montgomery's counsel to conduct two Rule 30(b)(6) depositions by videoconference in mid-October. As Houghton Mifflin's current objection demonstrates (Moving Br., Ex. 11), Montgomery's counsel made no effort to ensure that those videoconference depositions, which involved numerous documents, proceeded in an organized and orderly fashion, as his "counsel was unprepared to conduct the [first] deposition, having made no arrangements for the court reporter to receive or mark documents as exhibits at the deposition." (Id., ¶ 3.)

Specifically, rather than provide copies of the exhibits to the court reporter prior to the first deposition, Montgomery's counsel sent Houghton Mifflin's counsel—in a series of emails beginning at 8:36 p.m. the night before the deposition and continuing until 10:12 a.m. the day of the deposition (less than an hour before the scheduled start time)—twenty-five documents he advised would be used at the deposition; as a result, a staff member from Houghton Mifflin's counsel was at the office until 11:00 p.m. printing copies.  (<u>Id.</u>, ¶ 7.)   The same thing happened the next night prior to the second Rule 30(b)(6) deposition, as Montgomery's counsel emailed seventeen additional exhibits in a series of emails between 5:57 p.m. and 7:44 p.m.  (<u>Id.</u>)  Because Montgomery's counsel had made no effort to provide the court reporter with his exhibits in advance and in an orderly fashion, Houghton Mifflin's counsel was forced during the depositions to sift through dozens of proposed exhibits to find the one Montgomery's counsel intended to introduce and then hand it to the court reporter for identification.  That slipshod and ill-conceived manner of proceeding caused significant delay, confusion and prejudice to Houghton Mifflin and the deponents.  (<u>See id.</u>, ¶ 5.)  It should not be permitted to occur again.  The Court should therefore deny Montgomery's motion for leave to depose Bennett by videoconference, and should instead require that he attend in person any deposition that Court allows to proceed.

17

## <u>CONCLUSION</u>

For the reasons set forth above, the Court should deny Montgomery's motion to compel compliance with the Subpoena because he failed to properly serve that Subpoena; should either quash the Subpoena altogether or limit its scope to documents and testimony related to Simon & Schuster's decision not to publish <u>Pay Any Price</u>, subject to the objections of the Simon & Schuster parties and the Houghton Mifflin Defendants, and should not permit the deposition to proceed via videoconference.

Dated: November 23, 2015

Respectfully submitted,

MARINO, TORTORELLA & BOYLE, P.C.

By:   /s/ Kevin H. Marino
Kevin H. Marino
437 Southern Boulevard
Chatham, New Jersey 07928-1488
*Attorneys for Defendant Tina Bennett*