**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENNIS L. MONTGOMERY | |
| Plaintiff, | |
| v. | Civ. Action 15 Misc. 0363 |
| SIMON & SCHUSTER, | |
| and | |
| PRISCILLA PAINTON, | |
| and | |
| TINA BENNETT, | |
| Defendants. | |

**PLAINTIFF'S REPLY TO MISCELLANEOUS DEFENDANTS' AND THE FLORIDA DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL NON-PARTIES TINA BENNETT, PRISCILLA PAINTON AND SIMON & SCHUSTER TO COMPLY WITH PROPERLY-SERVED SUBPOENAS AND MOTION TO TAKE THE DEPOSITIONS BY VIDEOCONFERENCE AND REQUEST FOR TELEPHONIC HEARING AND REPLY TO TINA BENNETT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO COMPEL COMPLIANCE WITH A SUBPOENA AND IN SUPPORT OF HER CROSS-MOTION TO QUASH OR MODIFY THAT SUBPOENA AND REPLY TO MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF DENNIS L. MONTGOMERY'S MOTION TO COMPEL FILED BY DAVIS WRIGHT TREMAINE LLP**

## TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.  History of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

        B.  Service of Subpoenas . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

            1.  *Simon & Schuster and Priscilla Painton* . . . . . . . . . . . . . . . . . . . . . . . 5

            2.  *Tina Bennett* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

            3.  *Plaintiff Attempted to Meet and Confer With the Miscellaneous Defendants'
                and the Florida Defendants' Counsel* . . . . . . . . . . . . . . . . . . . . . . . . . .  11

        C.  Need for Further Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

            1.  *Simon & Schuster and Priscilla Painton* . . . . . . . . . . . . . . . . . . . . . . . 13

            2.  *Tina Bennett* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

            3.  *Discovery Is To Be Liberally Construed* . . . . . . . . . . . . . . . . . . . . . . . .  15

III.    LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

IV.     DEFENDANTS ARE NOT SHIELDED FROM ANY TYPE OF REPORTERS'
        PRIVILEGE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

        A.  Defendants Simon & Schuster and Priscilla Painton Are Not Immune From
            Producing the Documents Pursuant to Florida Law . . . . . . . . . . . . . . . . . . . . . .19

        B.  Defendants Simon & Schuster and Priscilla Painton Are Not Immune From
            Producing the Documents Pursuant to New York Law . . . . . . . . . . . . . . . . . . . 19

            1.  *Absolute Privilege* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

            2.  *Qualified Privilege* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

V.      PLAINTIFF'S REQUESTS ARE NOT OVERBROAD AND ARE PRECISELY
        CATERED TO THE TESTIMONY ALREADY PROVIDED THROUGH
        DEPOSITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

VI.     DEPOSITION BY VIDEOCONFERENCE IS PREFERRED IN CASES SUCH AS
        THIS AND ISMUTUALLY BENEFICIAL TO ALL PARTIES . . . . . . . . . . . . . . 25

VII.    PLAINTIFF IS ENTITLED TO REASONABLE ATTORNEYS' FEES AND
        COSTS PURSUANT TO 28 U.S.C. § 1927 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

VIII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

## I.    INTRODUCTION

Plaintiff, Dennis Montgomery, respectfully requests that Miscellaneous Defendants Simon & Schuster, Priscilla Painton, and Tina Bennett ("Miscellaneous Defendants") be ordered to appear for deposition and produce documents at the earliest practicable date, as this case is scheduled for trial to commence on March 21, 2016 and the discovery cut-off date was November 19, 2015. Miscellaneous Defendants Simon & Schuster, Priscilla Painton, and Tina Bennett were duly subpoenaed and served on October 20, 2025, but raised non-meritorious, disingenuous, and sometimes false objections in their pleadings. In the case of Tina Bennett, as set forth below, she failed to timely object at all.

In short, the Miscellaneous Defendants and the Florida Defendants, James Risen and his publishers, Houghton Mifflin Harcourt Publishing Company and Houghton Mifflin Harcourt Company, ("Florida Defendants"), recognizing the importance of these subpoenaed depositions, are going to extreme lengths to avoid the requested testimony and documents. They also resort to ad hominem attacks on Plaintiff's lead counsel before the U.S. District Court for the Southern District of Florida to try to draw attention away from the real issues.

This case was originally filed in the U.S. District Court for the Southern District of Florida and was filed against The Florida Defendants. The Florida Defendants viciously defamed Plaintiff Montgomery in their book, Pay Any Price: _Greed, Power and Endless War_ in order to sell a huge number of books by providing a false, misleading and sensationalized story, making Montgomery the centerpiece of their book, Pay Any Price. "The Emperor of the War on Terror," is Chapter 2, dedicated to Plaintiff Montgomery and at page 32, James Risen, Houghton Mifflin Harcourt Publishing Company, and Houghton Mifflin Harcourt Company, maliciously wrote:

> Montgomery was the maestro behind what many current and former U.S. officials and others familiar with the case now believe was one of the most elaborate hoaxes in American history, a ruse that was so successful that it nearly convinced the Bush administration to order fighter jets to start shooting down commercial airliners filed with passengers over the Atlantic. Once it was all over, once the fever broke and government officials realized that they had been taken by a grand illusion, they did absolutely nothing about it. The Central Intelligence Agency buried the whole insane episode and acted like it had never happened. The Pentagon just kept working with Montgomery. Justice Department lawyers fanned out across the country to try to block any information about Montgomery and his schemes from becoming public, invoking the state secrets privilege in a series of civil lawsuits involving Montgomery.

Chapter 2 of Pay Any Price, Exhibit 1. More libelous statements are strewn throughout the book, which was a New York Times bestseller and sold largely in Florida, the rest of the United States and throughout the world.

## II.   FACTUAL BACKGROUND

### A.  History of the Case

Plaintiff Montgomery is an expert on encryption who previously was employed by companies that provided decryption technology and software for U.S. intelligence agencies such as the National Security Agency ("NSA") and the Central Intelligence Agency ("CIA") to decipher coded messages by Osama Bin Laden and other terrorists and terrorist groups through broadcasts made on Al-Jazeera television.[1]

Since Florida Defendants James Risen, Houghton Mifflin Harcourt Publishing Company and Houghton Mifflin Harcourt Company published these false and misleading statements, Plaintiff Montgomery has been severely damaged by losing substantial work, contracts and business opportunities, and has endured severe emotional distress, which has aggravated his very

---

[1] Defendants published a book Pay Any Price: *Greed, Power and Endless War* (referred to as "Pay Any Price") by author James Risen, Copyright (c) 2014 by James Risen, designated by the Library of Congress by its index system as ISBN 978-0-544-34141-8 (hardback edition).

poor physical condition. In fact, since Plaintiff Montgomery has a potentially fatal brain aneurism, and has repeatedly been hospitalized and operated upon, the emotional distress of this defamation is life threatening. Florida Defendants James Risen, Houghton Mifflin Harcourt Publishing Company and Houghton Mifflin Harcourt Company and their counsel, and those supportive of them, have thus sought to slow down, run up the cost of litigation, complicate, and obstruct this case and delay its adjudication, obviously strategically as defense counsel wants to delay as long as possible, given Plaintiff Montgomery's dire, failing health and thus terminable condition.

During discovery, Florida Defendants Houghton Mifflin Harcourt Publishing Company and Houghton Mifflin Harcourt Company were noticed to produce for deposition a 30(b)(6) representative for both corporations, and they provided Bruce Nichols. During his deposition of October 15, 2015 to testify for each one, Nichols revealed for the first time that Pay Any Price originally was to be published by James Risen's longtime publisher, Simon & Schuster, and edited and reviewed by the Vice President and James Risen's editor with Simon & Schuster, Priscilla Painton, but that Simon & Schuster ultimately decided not to publish it. Given that Pay Any Price which was ultimately published by Houghton Mifflin Harcourt Publishing Company was defamatory, and that Simon & Schuster previously was indirectly involved in claims by the government that Risen had illegally published classified information in its prior book State of War which it published for Risen, as a result of which Risen was nearly indicted, and which did result in the government leaker Jeffrey Sterling being indicted, convicted and imprisoned (for which Sterling is now doing time in a federal prison), Plaintiff now seeks to discover the reasons Pay and Price was not published by Simon & Schuster. Obviously, if the reason was that Simon & Schuster believed Pay Any Price, upon fact checking, to be defamatory over what Risen

3

wrote, this could go to prove Montgomery's case that he, as an alleged public figure, was maliciously or recklessly libeled. Nichols also revealed that Defendant Risen's literary agent Tina Bennett played an integral role in the denial of publication of <u>Pay Any Price</u> by Simon & Schuster and she thus would know the reasons for the denial.  Ms. Bennett also negotiated to have Simon & Schuster relinquish its rights of publication and instead arranged to have Houghton Mifflin publish it. In short, this discovery is perhaps the most crucial discovery in this case and that is why the Miscellaneous Defendants and Florida Defendants are working together so diligently to prevent the disclosure of it and using any appropriate means to do so.

**B.** **Service of Subpoenas**

At the outset, it is clear that the Miscellaneous Defendants were served. Indeed, counsel for the Miscellaneous Defendants contacted Plaintiff's counsel for all of the Defendants after service was made. To avoid compliance, the Miscellaneous Defendants and their counsel go to convoluted lengths to disingenuously and falsely claim they were not property served. However, as set forth in the attached supplemental affidavits, and the prior ones attached to Plaintiff's initial pleading, the Miscellaneous Defendants were properly served pursuant to New York Rules of Civil Procedure 308 and 311.[2]

*1.* *Simon & Schuster and Priscilla Painton*

On October 20, 2015, a process server served Priscilla Painton and Simon & Schuster with Subpoenas at 11:58 a.m. In the Affidavit of the Process Server, Raymond Hollingsworth

---

[2] Plaintiff's counsel, Larry Klayman has not had his pro hac vice removed for this District, which the Miscellaneous Defendants' falsely assert. He did have an issue with the Honorable Denny Chin, 18 years ago. Judge Chin ruled that a copy of his order which removed Larry Klayman's pro hac vice before him be appended to any future application before other judges. As is true in Defendants' affidavits concerning service of process, this representation is misleading at best and intended to prejudice this Court. As set forth in the accompanying pro hac vice application, Bar Counsel for the District of Columbia and The Florida Bar reviewed this matter. Mr. Klayman was found to have acted ethically.

states under oath that he served Priscilla Painton "by personally delivering copies to the person being served." Mr. Hollingsworth notes the age range, sex, race, height, and weight of the witness and states that the "documents were left on desk as defendant refused to accept." *See* Affidavit of Service; Exhibit 2.

The process server's initial affidavits state that the subpoenas were served at Simon & Schuster's office at 1230 Avenue of the Americas in Manhattan. *Id.* The process personally served Ms. Painton with her subpoena on October 20, 2015 at 11:58 a.m. as she was physically present *Id.* at ¶ 3. A supplemental affidavit by Mr. Hollingsworth states that he arrived at the business address of Simon & Schuster and spoke with the security guard who then telephoned Ms. Painton and let her know that there were legal documents that were supposed to be served upon her and Simon & Schuster. *Id.* at ¶ 6. After several minutes, a white woman in her 50s arrived in the reception area and asked the process server what documents there were for her. *Id.* at ¶ 7. The process server asked if the woman was Ms. Painton and she confirmed that she was in fact Ms. Painton. *Id.* at ¶ 8.  Ms. Painton stated that she would accept service of process for Simon & Schuster, however she "turned her back away and walked away after seeing that she was personally being served with the Subpoena," *Id.* at ¶¶ 9-10.  He therefore left the Subpoena on the reception area desk *in her presence* and told her that she was being served *Id.* at ¶ 11.

In addition, in accordance with proper service procedure, Mr. Hollingsworth also mailed the papers to her by first class mail to 1230 Avenue of the Americas New York, NY 10020, which is Ms. Painton's and Simon & Schuster's corporate address. *Id.* at ¶ 15 Defendants conceded that "[c]opies of the subpoenas were also sent to Ms. Painton by regular mail and were received two days after this purported service on October 22, 2015. *See Affidavit of Sophia Jimenez* ("Jimenez Aff."), attached to Rosen Decl. as Ex. E, at ¶ 2.

A process server's sworn affidavits of service constitutes prima facie evidence of proper service and creates a presumption that service was effected. *See Caba v. Rai*, 882 N.Y.S.2d 56 (1st Dept. 2009); *In re de Sanchez*, 870 N .Y .S2d 24 (1st Dept. 2008). Where defendant provides only a conclusory affidavit denying receipt of the pleadings, defendant has not met her burden to rebut the presumption of service created by the process server's affidavit. *See Gonzalez v. City of New York*, 965 N.Y.S.2d 46 (1st Dept. 2013) citing *Grinshpun v. Borokhovich*, 954 N.Y.S.2d 520 (1st Dept. 2012). "A properly executed affidavit of service raises a presumption that a proper mailing occurred, and a mere denial of receipt is not enough to rebut this presumption." *Kihl v. Pfeffer*, 94 N.Y.2d 118, 122 (1999). In this case, as set forth herein, Plaintiff has even rebutted the false and misleading affidavits proffered after the fact by Miscellaneous Defendants and the Florida Defendants. *See* Exhibit 3 (Bennett Affidavit), Exhibit 4 (Simon & Schuster and Priscilla Painton Affidavit).

Further, Ms. Painton, Vice President of Simon & Schuster, an officer of the corporation, as she admits she is Vice President, is specifically able to accept service of process for the corporation under both the Federal Rules of Civil Procedure and New York law.

Federal Rules of Civil Procedure 4(h) provides, in pertinent part:

(h) SERVING A CORPORATION, PARTNERSHIP, OR ASSOCIATION. Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:

(1) in a judicial district of the United States:

(A) in the manner prescribed by Rule 4(e)(1) for serving an individual; or

**(B) by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant**;

(emphasis added); *Anselm v. Diamond Packaging*, 2015 U.S. Dist. LEXIS 58824 (W.D.N.Y. May 4, 2015) ("Service of process on a corporation is governed by Rule 4(h) of the Federal Rules of Civil Procedure. Specifically, Rule 4(h)(1)(B) provides, in pertinent part, that service may be accomplished by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process[.]").

In *Western Sur. Co. v. Bykev Int'l Inc*., 2015 U.S. Dist. LEXIS 116165, 4-5 (S.D.N.Y. Sept. 1, 2015) this Court, the U.S. District Court for the Southern District of New York, held that:

> The rules also allow for service in accordance with the law of the state where service is made (i.e. California) or where the district court overseeing the case is located (i.e. New York). See Fed. R. Civ. P. 4(e)(1). Both states allow for service of process in a manner that mirrors the federal rules.n1 The rules further provide that a corporation may be served in accord with Rule 4(e)(1) or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." See Fed. R. Civ. P. 4(h). Again, both California and New York allow for similar methods of serving a corporation."

*Id.* Indeed, as stated above in *Western Sur. Co.,* under N.Y. CVP. LAW § 311, personal service of process for a corporation can be made as follows:

> § 311.  Personal service upon a corporation or governmental subdivision
>
> **(a)** Personal service upon a corporation or governmental subdivision shall be made by delivering the summons as follows:
>
> **1. upon any domestic or foreign corporation, to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service.** A business corporation may also be served pursuant to section three hundred six or three hundred seven of the business corporation law. A not-for- profit corporation may also be served pursuant to section three hundred six or three hundred seven of the not-for-profit corporation law.

(Emphasis added); *see also Germain v A.O. Smith Water Prods. Co.*, 41 Misc. 3d 1228(A), 1228A (N.Y. Sup. Ct. 2013). As the court held in *Germain*:

> CPLR 311(a) permits service of process on a corporation by personal service on a corporate officer, including the treasurer. Fashion Page, Ltd. v Zurich Ins. Co., 50 NY2d 265, 272, 406 N.E.2d 747, 428 N.Y.S.2d 890 (1980). Such service fulfills the "statutory aim [of CPLR 311] since their positions are such as to lead to a just presumption that notice to them will be notice to the * * * corporation.'" Id. (quoting Tauza v Susquehanna Coal Co., 220 NY 259, 269, 115 N.E. 915 [1917]).

*Germain v A.O. Smith Water Prods. Co.*, 41 Misc. 3d 1228(A), 1228A (N.Y. Sup. Ct. 2013). In fact, service of process upon a corporation is proper even if the officer is not even located at the corporation when served. *Port Auth. of NY & N.J. v American Stevedoring, Inc.*, 27 Misc. 3d 1218(A), 1218A (N.Y. Civ. Ct. 2010) ("This Court finds that in a summary proceeding, personal service of process upon a corporate officer is proper even if delivered at a locale other than the premises sought to be recovered by the petitioner. CPLR § 311").

Thus, under both The Federal Rules of Civil Procedure, as well as the New York Rules of Civil Procedure, service of process for Simon & Schuster was properly made when it was delivered upon Ms. Priscilla Painton, an officer of that corporation. *See* Exhibit 5.

### 2. *Tina Bennett*

On October 20, 2015, a process server served Tina Bennett through Ms. Svetlana Katz, the administrative assistant for Tina Bennett, with a Subpoena at 1:13 p.m. *See* Supplemental Affidavit of Raymond Hollingsworth; *see* Exhibit 3. In the Affidavit of the Process Server, Raymond Hollingsworth states under oath that he served Svetlana Katz, the administrative assistance to Tina Bennett at the place of business. *Id.* at ¶¶ 4-6. When the process server arrived at Ms. Bennett's place of employment, William Morris Endeavor, he asked for Ms. Bennett and informed the person at the desk that he had legal documents for Ms. Bennett. *Id.* at ¶ 4. Ms. Katz, her administrative assistant, greeted the process server in Ms. Bennett's place of work. *Id.* at ¶ 5.

She stated that she was Svetlana Katz, administrative assistant for Ms. Bennett. *Id.* at ¶ 5. The

process server asked Ms. Katz if she would accept the Subpoena for Ms. Bennett. *Id.* at ¶ 6.  Ms.

Katz agreed to accept service of the Subpoena on behalf of Ms. Bennett. *Id.* The subpoena was

personally served to Ms. Katz and was not left in the mail room. *Id.* at ¶ 8.

> Pursuant to CPLR §308:
>
> Substituted Service: This type of service is considered a form of personal service
> and has a two-step process. First, delivering the papers within the state to a person
> of suitable age and discretion at the actual place of business, dwelling place or
> usual place of abode (residence) of the person to be served. Second, by mailing
> the papers by first class mail to the person to be served at his or her last known
> residence or mailing them to his or her actual place of business.

Svetlana Katz is a person of suitable age and discretion at the actual place of business of Tina

Bennett's and therefore Tina Bennett was served by personal service. Mr. Hollingsworth also

swears under oath that he sent the Subpoena by first class mail to the person being served at the

actual place of business. *Id.* at ¶ 9. Notably, CPLR §308 does *not* require Certified Mail, and *only*

requires that a copy of the subpoena be sent by first class mail. A copy of the Subpoena by first

class mail to Tina Bennett on October 21, 2015 to the following address: 11 Madison Ave, New

York, NY 10019, which is the corporate address of William Morris Endeavor where Ms. Bennett

works. *Id.* at ¶ 9.

**Tina Bennett did not object timely, and in fact her time to object has passed. The**

**fourteen (14) day period to object has been waived.** FRCP 45(d)(2)(B) provides:

> A person commanded to produce documents or tangible things or to permit inspection
> may serve on the party or attorney designated in the subpoena a written objection to
> inspecting, copying, testing or sampling any or all of the materials or to inspecting the
> premises—or to producing electronically stored information in the form or forms
> requested. The objection must be served before the earlier of the time specified for
> compliance or 14 days after the subpoena is served. If an objection is made, the following
> rules apply:
> (i) At any time, on notice to the commanded person, the serving party may move the
> court for the district where compliance is required for an order compelling production or

inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Fed. R. Civ. P. 45(d)(2)(B).

**Ms. Bennett has waived objections to the production of the Subpoenaed documents, and also her testimony or the taking of her deposition by videoconference.** All objections are deemed waived if the recipient fails to serve its objections in a timely fashion. *See Application of Sumar*, 123 F.R.D. 467, 572 (S.D.N.Y. 1988); *see also* Exhibit 15 ("Since you have reneged on our proposed attempt to reach an accommodation and as we reserved all rights as I suspected that the Defendants counsel would intervene and dissuade you not to be cooperative and your client has not objected timely to the subpoena duces tecum that was properly and duly served on her and has waived any belated objections, we will require full production of documents and related testimony.").

### 3. *Plaintiff Attempted to Meet and Confer With the Miscellaneous Defendants' And the Florida Defendants' Counsel*

Plaintiff's counsel met and conferred in good faith with the Miscellaneous Defendants' counsel and the Florida Defendants' counsel. But, counsel did not want to take "yes" for an answer. On November 2, 2015, Andrew K. Nieh, counsel for Simon & Schuster and Priscilla Painton, sent a letter to Plaintiff Montgomery's counsel outlining objections to each and every request Plaintiff Montgomery sought in the attachment to the Subpoenas. *See* Exhibit 6. These non-meritorious objections were simply made in an effort to obstruct compliance with the subpoenas.  Plaintiff's counsel corresponded on numerous occasions with Mr. Nieh in an effort to resolve any potential objections. Mr. Nieh falsely stated, "S&S is still prepared to meet and confer about the service defects and the other issues discussed in my letter, but, in the meantime,

S&S continues to rest on its objections to your document requests." *Id.* However, Plaintiff's counsel further made several phone calls to Mr. Nieh in order to meet and confer with him over the subpoenas, and Mr. Nieh failed to respond to Plaintiff's counsel's phone calls. *Id.* As Plaintiff's counsel stated in his email of November 6, 2015, "I called you after I got your letter and you did not have the professional courtesy to call me back." Exhibit 7. Plaintiff's counsel further provided checks that would more than sufficiently cover the expenses of witness and travel fees. *Id.* However, Mr. Nieh was unwilling to act in good faith, claiming that he was unable to accept witness fees for his clients, and requesting to mail the checks back instead of complying with the subpoena. *Id.* Mr. Nieh stated: "Furthermore, I have not been authorized to accept service of any witness fees on behalf of S&S. Please provide me with the correct address where I can send the checks back to you." Thus, it was clear that Mr. Nieh's actions were not done in good faith but rather simply to obstruct the depositions. Due, in part, to Mr. Nieh's unwillingness to cooperative and facilitate the subpoenas duces tecum of Simon & Schuster as well as Priscilla Painton, Plaintiff, an individual party, was forced to file this very expensive action with this Court against Miscellaneous Defendants who have a collective net worth of billions of dollars and can afford to run up attorneys' fees and costs.

Similarly, Plaintiff's counsel also attempted to meet and confer with counsel for Ms. Tina Bennett, Mr. Kevin Marino. *See* Exhibit 8. After initially agreeing to produce Ms. Bennett for a deposition, Mr. Marino later refused to produce his client for deposition simply based on the fact that he "cannot imagine you will be able to identify and forward to me the exhibits you plan to use in examining Ms. Bennett on Tuesday." *Id.* But first, Mr. Marino wrote to Plaintiff's counsel:

Larry,

Nice chatting with you. As we discussed, please confirm that this email request for Ms. Bennett's documents and testimony concerning the reasons why Simon & Schuster did not and/or refused to publish the Book by James Risen, Pay Any Price supersedes your 23-item document request (Attachment A), which has been withdrawn. I will confer with Ms. Bennett regarding your request for her consent to proceeding by videoconference. In the meantime, can you tell me if there is a reason why you have noticed her deposition for 1345 Avenue of the Americas" It would be much more convenient to do the deposition at my office in Chatham, New Jersey. Please advice.

Kevin.

*See* Exhibit 9.

Mr. Marino then later, after he had "consulted" with counsel with the Miscellaneous Defendants and the Florida Defendants, reneged, claiming that "[i]n all events, Ms. Bennett's deposition should await resolution of your motion to enforce the subpoena." *See* Exhibit 10.

Plaintiff's counsel, recognizing that James's Risen and Houghton Mifflin Harcourt's attorneys likely persuaded Mr. Marino to begin obstructing the deposition of Ms. Bennett, stated that, "[s]ince you have reneged on our proposed attempt to reach an accommodation [sic] and as we reserved all rights as I suspected that the Defendants counsel would intervene and dissuade you not to be cooperative and your client has not objected timely to the subpoena duces tecum that was properly and duly served on her and has waived any belated objections, we will require full production of documents and related testimony." Exhibit 11.

In sum, Mr. Marino acted in bad faith by deciding that he would no longer produce Ms. Bennett for a deposition, and knowing that Plaintiff would be facing a fast-approaching discovery deadline. Mr. Marino effectively strung Plaintiff along in order to obstruct and prevent Ms. Bennett's deposition, likely in collusion with that James's Risen and Houghton Mifflin Harcourt's attorneys. This was done simply in an effort to prejudice Plaintiff and run up the attorneys' fees and costs, and to prevent him from taking discovery of a crucial witness. For

12

the Miscellaneous Defendants and the Florida Defendants, the stakes of allowing these depositions to proceed were too great to consult and comply with the duly served subpoenas in good faith.

### C.  <u>Need for Further Discovery</u>

#### 1.  *Simon & Schuster and Priscilla Painton*

In their Motion to Quash, Simon & Schuster admits that "S&S originally contracted with Mr. Risen several years ago to publish the Book and Ms. Painton was assigned as its editor. In 2013, S&S reverted rights to the Book back to Mr. Risen who sold them to Houghton Mifflin, which published the Book in 2014." *See* Motion to Quash at p. 1.

The reasons why Simon & Schuster ultimately did not publish The Book are critical and relevant as the testimony and documents will likely show that Priscilla Painton and Simon & Schuster rejected publication because it saw and determined that The Book was defamatory toward Mr. Montgomery and/or contained classified government information that could subject them to civil and criminal liability, if not prosecution. In this regard, Defendant Risen almost went to prison over the use of classified information concerning Jeffrey Sterling, in a prior book published by none other than Simon & Schuster. Indeed, Sterling himself is currently serving time for illegally disclosing to Defendant Risen classified, government information.

**The testimony and documents sought go to a core issue of the case; whether Simon & Schuster refused to publish <u>Pay Any Price</u> because it found the manuscript to be written with actual malice and defamation, and whether the author, Defendant Risen herein, did not in fact rely on confidential or other sources, but instead made up the published claim that Plaintiff Montgomery had committed what in effect was the biggest hoax in American history.**

13

### 2. *Tina Bennett*

Tina Bennett is the literary agent of Defendant Risen who had intimate contact and worked with Simon & Schuster, Priscilla Painton and the actual publisher Houghton Mifflin over the publication of Defendant James Risen's <u>Pay Any Price</u> and thus has intimate knowledge of the reasons why Simon & Schuster decided not to publish <u>Pay Any Price</u>. Yet, at the last minute, Simon & Schuster strongly refused to publish <u>Pay Any Price</u> and relinquished its rights to it. Bruce Nichols, a FRCP 30(b)(6) representative of Houghton Mifflin testified that Tina Bennett was Defendant Risen's literary agent who facilitated the move from Priscilla Painton and Simon & Schuster to Houghton Mifflin Harcourt Publishing Company.

### 3. *Discovery Is To Be Liberally Construed*

Rule 26(b) of the Federal Rules of Civil Procedure allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26. The allowable scope of discovery "has been construed broadly to encompass any matter that bears on, or that reasonably cold lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). The Federal Rules of Civil Procedure also provide federal courts with the power to compel compliance with subpoenas and disclosure requests that seek relevant information. *See* Fed. R. Civ. P. 45(c)(2)(B)(i); Fed. R. Civ. P. 37(a)(1). Indeed, this Court has recognized that "discovery[] is an extremely broad concept." *Condit v. Dunne*, 225 F.R.D. 100, 105 (S.D.N.Y. 2004). Thus, the Rule 26(b)(1) standard presents a "relatively low threshold" for a party to show that the material

sought is relevant to any claim or defense in the litigation. *In re Zyprexaf Injunction*, 474 F. Supp. 2d 385, 421 (E.D.N.Y. 2007).

Plaintiff's counsel issued Subpoenas Duces Tecum to Priscilla Painton, Simon & Schuster, and Tina Bennett on October 19, 2015. Exhibit 12.

"A subpoena must issue from the court where the action is pending." Fed. R. Civ. P. 45(a)(2). Here, the relevant subpoena issued in connection with a civil action that is pending in the United States District Court for the Southern District of Florida. (ECF No. 6-2 at 2.) Thus, in compliance with Federal Rule of Civil Procedure 45, the subpoena issued out of the United States District Court for the Southern District of Florida. (*Id.*); Fed. R. Civ. P. 45(a)(2). "Challenges to compliance are to be made to the court where compliance is required." 1 Federal Rules of Civil Procedure, Rules and Commentary Rule 45. "The court for the district where compliance is required . . . may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena . . ." Fed. R. Civ. P. 45(g).

The Subpoenas direct Simon & Schuster, Priscilla Painton and Tina Bennett to produce a narrowly defined set of documents that are highly relevant to the underlying action, and for all three (3) to appear at depositions to provide testimony on the same subjects. The depositions were originally scheduled for November 9, 2015 and November 10, 2015.

Simon & Schuster, Priscilla Painton and Tina Bennett were duly served with the subpoenas on October 20, 2015, in the manner prescribed above.

## III.   LEGAL STANDARD

Fundamentally, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Although not unlimited, relevance, for the purpose of discovery, is an extremely broad concept." *Condit v. Dunne*, 225

F.R.D. 100, 105 (S.D.N.Y. 2004); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Discovery "'encompass[es] any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Schoolcraft v. City of New York*, No. 10 Civ. 6005, 2012 WL 2161596, at *12 (S.D.N.Y. June 14, 2012) (quoting *Oppenheimer Fund Inc.*, 437 U.S. at 351). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

Importantly, while the Federal Rules of Civil Procedure authorizes a party to obtain information "regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action" and information "reasonably calculated to lead to discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), a district court "**whose only connection with a case is supervision of discovery ancillary to an action in another district should be especially hesitant to pass judgment on what constitutes relevant evidence thereunder.**" *Truswal Sys. Corp. v. Hydro Eng'g, Inc.*, 813 F.2d 1207, 1211-12 (Fed. Cir. 1987) (emphasis added); accord *Compaq Computer Corp. v. Packard Bell Elecs. Inc.*, 163 F.R.D. 329, 335 (N.D. Cal. 1995). **Where relevance is in doubt, the district court is to be permissive**. *Truswal*, 813 F.2d at 1212 (emphasis added); *Compaq Computer*, 163 F.R.D. at 335.

Here, the only connection this honorable Court has with the pending case in the U.S. District Court for the Southern District of Florida is the supervision of this limited discovery action. Therefore, it should be deferential and "hesitant to pass judgment" on what Plaintiff sets forth as relevant. *Truswal*, 813 F.2d at 1211-12.

## IV. DEFENDANTS ARE NOT SHIELDED FROM ANY TYPE OF REPORTERS' PRIVILEGE

Florida law must govern this action because in tort cases, such as this case, the law of the place of the wrong governs. *See* Restatement of Conflict of Laws § 377. The primary wrong here occurred in Florida. But, even if New York law applies – which it does not – Defendants Simon & Schuster and Priscilla Painton are still required to produce the requested documents and testify at deposition. Indeed, federal courts should "embrace[] the liberal discovery provisions available against nonparties and adhere[] to the sweeping language contained in Fed. R. Civ. P. 26(b) and in *Hickman v. Taylor*, 329 U.S. 495, 507 [] (1947) (holding that "the deposition-discovery rules are to be accorded a broad and liberal treatment"). Simon & Schuster and Priscilla Painton are third parties with intimate knowledge of a matter that bears on, or that reasonably could lead to other matters that could bear on, issues that are in the case. *See Schoolcraft*, 2012 WL 2161596, at *12.

Moreover, when a publication allegedly defames someone, the bar to hurdle over in order for the privilege not to apply is lowered. In *News-Journal Corp. v. Carson*, the issue was whether Florida's qualified journalist's privilege statute barred discovery of two documents. The court ruled that both documents had to be produced, one because the journalist waived his right to keep it confidential, and the other because the document could *theoretically* show liability on the part of the journalist and therefore he was not shielded from any type of privilege. The appeals court in Florida correctly lowered the bar significantly in order for **allegedly defamed plaintiffs** to easily hurdle over the so-called reporter's privilege threshold:

> **The common law has long recognized and upheld the right of persons damaged by libel and slander to bring a tort suit to redress their injuries caused by a defamatory publication. This is strong public policy which carries great weight. In many such cases, upholding the privilege has the effect of making proof of actual malice impossible because establishing what the publisher knew or did not know at the time of the publication depends on the kind and quality of the information and identify of the sources at hand when the publication was made.**

*News-Journal Corp. v. Carson*, 741 So.2d 572, 576 (Fla. Dist. Ct. App. 5th Dist. 1999) (emphasis added).

Here, the anticipated testimony generally does not even concern privileged information. Plaintiff seeks information about the reasons why Pay Any Price was not published by Simon & Schuster and Priscilla Painton. This could include but not be limited to a determination by the publisher that Pay Any Price was defamatory and/or that James Risen had used classified information, which otherwise could be a crime if it is disclosed. These two examples of anticipated discovery do not reveal who the source is. Accordingly, Defendants' Oppositions and Motions to Quash are non-meritorious, in large part. Even if so-called privilege source material will be elicited through testimony and documents, as set forth below, since reporter James Risen and his publishers are defendants, they have little basis to claim these privileges under established case law in both Florida, New York and throughout the country.

**A.** **Defendants Simon & Schuster and Priscilla Painton Are not Immune from Producing the Documents Pursuant to Florida Law**

In Florida, where this case was filed and is being adjudicated, a professional journalist **does not** have a privilege if the party seeking discovery can show that (1) **the information is relevant and material to unresolved issues that have been raised in the proceedings for which the information is sought**; (b) the information cannot be obtained from alternative sources; and (c) **a compelling interest exists for requiring disclosure of the information.** Fla. Stat. § 90.5015(2). As argued at length in Plaintiff's Emergency Motion to Compel [Dkts. # 1, 2], which is incorporated herein by reference, Plaintiff establishes his right to the requested documentation because he easily satisfies each of the elements outlined above.

**B.** **Defendants Simon & Schuster and Priscilla Painton Are not Immune from Producing the Documents Pursuant to New York Law**

### 1.    *Absolute Privilege*

Some "[f]ederal courts agree that an unqualified protection exists which shelters journalists from disclosing confidential sources, but they do not invoke it unless, after balancing competing interests, the scale tips in favor of nondisclosure." *Lipinski v. Skinner*, 781 F. Supp. 131, 135 (N.D.N.Y. 1991). "That is, on a case by case basis, federal courts generally weigh a reporter's claim to First Amendment protection from forced disclosure against the opposing party's claim to probative evidence." *United States v. Burke*, 700 F.2d 70, 77 (2d Cir. 1983).

As such, the absolute privilege under New York's Shield Law applies *only* to requests that seek *confidential* sources and materials. Importantly, and as Defendants' concede, out of twenty-three (23) narrowly tailored document requests Plaintiff seeks, only *two* mention confidential materials: (10) "Any and all documents that refer or relate in any way to the communications between James Risen and Priscilla Painton regarding confidential sources" and (11) "Any and all documents that refer or relate in any way to the communications between James Risen and Priscilla Painton regarding classified material and/or sources." *See* Exhibit 13.

In the first instance, it would appear that the information Plaintiff seeks for these two requests is privileged. However, document requests (10) and (11) do not necessarily relate to confidential source material only. The document requests' seek communications *regarding* confidential sources; this does not stand for the proposition – as Defendants' would like this Court to believe – that Defendants must produce those confidential sources or materials; rather, only pertinent and relevant information *regarding* those confidential sources or materials. For example, if Plaintiff requests information on whether confidential source material exists at all, then that request would not be subject to the New York Shield Law's absolute privilege because it does not seek the disclosure of such confidential materials or sources.

But, even if Plaintiff requested this confidential information, there is not an absolute privilege for these types of communications. While the Shield Law exempts some professionals from producing confidential sources, "the Legislature has never established an absolute right or granted journalists complete immunity from all legal consequences of refusing to disclose evidence relating to a news source." *Oak Beach Inn Corp. v. Babylon Beacon, Inc.*, 62 N.Y.2d 158, 165 (1984). Finally, if Defendants' want to object to a particular question or document request, they can do so at the deposition. *See Hickman*, 329 U.S. at 507.

### 2.     *Qualified Privilege*

The New York Shield Law provides professional journalists with a qualified privilege for refusing to disclose non-confidential news. "Where a civil litigant seeks nonconfidential materials from a nonparty press entity, the litigant is entitled to the requested discovery . . . if he (1) can show that the materials at issue are of likely relevance to a significant issue in the case and (2) are not reasonably obtainable from other available sources." *Gonzales v. National Broadcasting Co.*, 194 F.3d 29 (2d Cir. 1999); *see also* N.Y. Civil Rights Law § 79-h(c). Plaintiff easily satisfies these requirements. In addition, the U.S. Court of Appeals for the Second Circuit laid the groundwork for this test in *Burke*, 700 F.2d. However, as this Court noted in *United States v. Markiewicz*, courts should not apply the three-pronged standard as if strapped by a set of wooden rules. Rather, the test should be flexibly employed, taking into account various factors which diminish the strength of the qualified immunity privilege. *United States v. Markiewicz*, 732 F. Supp. 316, 320 (N.D.N.Y. 1990).

First, the documents and testimony Plaintiff seeks are *critical* to his case. During the discovery process, Houghton Mifflin Harcourt Publishing Company and Houghton Mifflin Harcourt Company's 30(b)(6) representative, Mr. Bruce Nichols, admitted in his deposition of

October 15, 2015 that <u>Pay Any Price</u> was originally to be published by Risen's long-time publisher, Simon & Schuster, and edited and reviewed by the Vice President and Risen's editor with Simon & Schuster, Priscilla Painton. Tina Bennett is the literary agent of Risen who had contact with Simon & Schuster, Priscilla Painton and the actual publisher Houghton Mifflin Harcourt Publishing Company over the publication of James Risen's <u>Pay Any Price</u> and thus has intimate knowledge of the reasons why Simon & Schuster decided not to publish <u>Pay Any Price</u>. Yet, at the last minute, Simon & Schuster refused to publish <u>Pay Any Price</u> and relinquished its rights to it. Bruce Nichols, a 30(b)(6) representative, testified that Tina Bennett was James Risen's literary agent who facilitated and has detailed knowledge of the move from Priscilla Painton and Simon & Schuster to Houghton Mifflin Harcourt Publishing Company.

The reasons behind why Simon & Schuster and Priscilla Painton did not publish <u>Pay Any Price</u> are critical and relevant as the testimony and documents will likely show that Priscilla Painton and Simon & Schuster rejected publication because they saw and determined that <u>Pay Any Price</u> was defamatory and/or contained potentially classified government information that could subject them to civil or even criminal liability. In this regard, James Risen and Simon & Schuster barely escaped prosecution over the use of classified information concerning Jeffrey Sterling in a prior book published by none other than Simon & Schuster. Indeed, Sterling himself is currently serving time for illegally disclosing to Risen classified government information.

In *Aequitron Medical v. CBS, Inc.*, a plaintiff manufacturer filed an action against defendants, a broadcasting corporation and its news division, for deceptive trade practice and tortious interference with prospective business advantage in connection with a new segment aired by the corporation. *Aequitron Medical v. CBS, Inc.* 1995 U.S. Dist. LEXIS 9485, at \*1

(S.D.N.Y. July 6, 1995). The court held that the journalist's privilege is not as strictly enforced when the news entity is a defendant in a defamation or libel case. *Id*. at *8.

In *Miller v. Transamerican Press, Inc.*, defendants, a publishing company, challenged the lower court's motion that granted a motion for disclosure of the identity of the confidential informant used as the source for defendants' magazine article alleging pension fund theft. The defendants in *Miller* appealed. The Court held the plaintiff in a libel suit can compel discovery of the identify of a confidential source of the journalist defendants because the information sought was relevant to plaintiff's case. *Miller v. Transamerican Press, Inc.,* 621 F.2d 721, 722 (5th Cir. 1980).

Here, as in *Aequitron and Miller*, Plaintiff seeks information that is critical to his case and therefore any so-called privilege of confidential sources loses when balanced with the compelling need for the information and the significant relevance the information sought has on Plaintiff's underlying case.

Second, the information sought here cannot be obtained elsewhere. In *Gonzales v. National Broadcasting Co.*, NBC asserted that outtakes of Dateline were protected from disclosure by the journalist privilege on the ground that evidence of the event in question was available elsewhere. The U.S. Court of Appeals for the Second Circuit, however, was "persuaded that the outtakes contain information that is not reasonably obtainable from other available sources . . ." It also found that "a deposition is not an adequate substitute for the information that may be obtained from the videotapes." *Gonzales v. National Broadcasting Co.*, 194 F.3d 29, 36 (2d Cir. 1999); *see also Schiller v. City of New York*, 245 F.R.D. 112, 120 (S.D.N.Y 2007).

The same rationale applies here. The information sought cannot be obtained through any other means. Only Simon & Schuster, James Risen's long-time publisher, and its Vice President

and Chief Editor, Priscilla Painton, know the reasons and details why Pay Any Price was not published by Simon & Schuster. This information and documentation is in the sole possession of Simon & Schuster and Priscilla Painton and no one else.

Moreover, as is true here, where the journalists have already published the information requested, no privilege applies. As stated by the court in *People v. Craver*, 150 Misc.2d 631 (N.Y. County Ct. 1990), "by knowingly publishing excerpts of the interview with the defendant, . . . [the journalist] has waived the statutory privilege with respect to published portions of that interview." *Id.* at 634. Here, many of the document requests seek information that may have already been published. For example, Document Request (1) seeks any and all documents that refer or relate in any way to Dennis Montgomery. However, Plaintiff cannot possibly know if the information had been published unless it is turned over to him. Defendants here cannot use their blanket objections to refuse to produce information that may not be subject to a privilege in any event. Indeed, that is the purpose of discovery; to determine what is relevant to make a case.

## V.   PLAINTIFF'S REQUESTS ARE NOT OVERBROAD AND ARE PRECISELY CATERED TO THE TESTIMONY ALREADY PROVIDED THROUGH DEPOSITIONS

It is, of course, black letter law that a party is required to respond to discovery requests "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). "Generally speaking, discovery is limited only when it is 'sought in bad faith, or harass or oppress the party subject to it, when it is irrelevant, or when the examination is on matter protected by a recognized privilege.'" *Trilegiant Corp. v. Sitel Corp.*, No. 09 Civ. 6492, 2011 WL 2693299, at *3 (S.D.N.Y. July 1, 2011) (quoting *In re Six Grand Jury Witnesses*, 979 F.2d 939, 943 (2d Cir. 1992)). Indeed, the fact that a party has objected to a request does not justify its refusal to answer the request; once the party has established the grounds for its objection, it must

still make a good faith effort to answer the request. *See, e.g., Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, No. Civ A. 94-2395-GTV, 1995 WL 625744, at *3 (D. Kan. Oct. 5, 1995) ("An ambiguous [request] should be answered as far as possible with appropriate qualification or explanation, rather than objected to entirety").

Defendants' objections to Plaintiff's discovery requests do not satisfy their burden to show that they should somehow be excused from producing the requested documents. Accordingly, while "[a] party should not have to resort to bringing a motion to compel in order to obtain compliance with reasonable discovery requests," the Defendants have given Plaintiff no other choice here. *Factor v. Mall Airways, Inc.*, 131 F.R.D. 52, 54 (S.D.N.Y. 1990). Moreover, Defendants,' through their blanket objections and grumbling about "inconvenience," have failed to produce *one* document, indicating that they are not making any good faith effort to answer Plaintiff's requests.

As Defendants concede, only *two* (2) of the twenty-three (23) narrowly tailed document requests contain the language "confidential." *See* Exhibit 13. And as discussed above, even these requests are not shielded from production because the requests seek information *regarding* the classified information. Moreover, even if Defendants can claim that these two requests are somehow shielded by the reporters' privilege – which they are not – there are still twenty-one (21) other document requests that are not – and cannot – be subject to the reporter's privilege as they are absolutely critical to Plaintiff's case and the information sought cannot be obtained through any other means.

## VI.   DEPOSITION BY VIDEOCONFERENCE IS PREFERRERD IN CASES SUCH AS THIS AND IS MUTUALLY BENEFICIAL TO ALL PARTIES

The Florida Defendants' disingenuous letter that they refer to (in one sentence) in their Opposition holds no legal weight. It is simply a diatribe of complaints intended to prejudice this

Court. Contrary to the Florida Defendants' representations, "parties routinely conduct depositions via videoconference, and courts encourage the same, because doing so minimizes travel costs." *Forauer v. Vermont Country Store, Inc.*, No. 5:12-cv-276, 2014 WL 2612044, at * 7 (D. Vt. June 11, 2014) (quoting *Gee v. Suntrust Morg., Inc.*, 2011 WL 5597124 (N.D. Cal. Nov. 15, 2011). Videoconference depositions are a "presumptively valid means of discovery." *Normande v. Grippo*, No. 01 Civ. 7441, 2002 WL 59427, at *2 (S.D.N.Y. Jan. 16, 2002). Moreover, "[a]uthorization to take telephonic [videoconference] depositions does not depend upon a showing of hardship by the applicant." *Advani Enterprises, Inc. v. Underwriters at Lloyds*, No. 95 Civ. 4864, 2000 WL 1568255, at * 2 (S.D.N.Y. Oct. 19, 2000). Indeed, here, it would be hardship for Plaintiff and his counsel to travel to the distant city of New York to conduct the depositions. By contrast, there is little prejudice to the Miscellaneous Defendants, who would also save expenses by being deposed by videoconference. It should come as no surprise that Plaintiff is an individual who has little to no resources and is in failing health, while the Miscellaneous and Florida Defendants are collectively worth billions of dollars.

The Florida Defendants alleged again falsely that prior video conferencing resulted in wasted time. However, there is nothing in the record to support this other than a self-serving and falsified letter of their counsel. The two depositions of the Rule 30(b)(6) representative for two different corporate defendants in fact went quickly and took far less than the 14 hours that could have been used as permitted by the local rules of the Southern District of Florida. Each deposition was over in just a few hours. Indeed, there is no order of any kind from the court in Florida substantiating this false claim. It is part and parcel to all the misleading and ad hominem attacks contained in the pleadings. Unable to deal effectively with the substance of the issues before this court, the Florida and Miscellaneous Defendants' counsel, who obviously have

25

coordinated their attacks, have to resort to these ad hominem attacks. But the facts and the law instruct otherwise.

To the contrary, Plaintiff's lead counsel in Florida has had a tremendously successful thirty-eight (38) year career as a lawyer despite occasionally having issues with only a few judges. Recently, he obtained an unprecedented major victory against the NSA's unconstitutional telephone surveillance of hundreds of millions of Americans. *See* Exhibit 14.

This Court should order the depositions to be taken by videoconference, especially in light of Plaintiff's good faith offer of providing exhibits and other materials to Defendants' counsel beforehand. Yet, as the original discovery deadline was November 19, 2015, Plaintiff Montgomery has asked for an extension of one (1) month, to December 19, 2015. This extension request has not been granted thus far but speed is crucial here as the information Plaintiff seeks is directly relevant to his case. Plaintiff is willing to take the depositions of Simon & Schuster and Priscilla Painton in person if necessary but prefer a videoconference as it is in the interests of justice and provides a benefit to all parties, as it reduces costs, as set fort in Plaintiff's initial pleading.

## VII.   PLAINTIFF IS ENTITLED TO REASONABLE ATTORNEYS' FEES AND COSTS PURSUANT TO 28 U.S.C. § 1927

Payment of Plaintiff's attorney's fees and costs is warranted in this case pursuant to 28 U.S.C. §1927, which states in pertinent part:

> Any attorney or other person admitted to conduct cases in any court of the United States who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. §1927.

Requests for an award under 28 U.S.C. §1927 may be brought at any time, by separate action or by motion in an existing action. *See also Oliveri v. Thompson*, 803 F.2d 1265, 1267 (2d

Cir. 1986) (noting that sanctions against attorneys are necessary to administration of judicial system and, by removing abuses in litigation and promoting efficiency, provide means to make judicial system more efficient), *cert. denied,* 107 S.Ct. 1373 (1987). In *Oliveri* the United States Court of Appeals for the Second Circuit noted that severe abuse of the litigation system may even lead to penalties more severe than monetary sanctions, such as contempt citations, proceedings by bar associations, suspension, and disbarment. *Gordon v. Heimann*, 715 F.2d 531 (11th Cir. 1983). To warrant sanctions, an attorney must (1) "engage in unreasonable and vexatious conduct"; (2) "this conduct must multiply the proceedings"; and (3) "the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Peer v. Lewis,* 606 F.3d 1306, 1314 (11th Cir. 2010); *Amlong v. Amonglong, P.A. v. Denny's, Inc.,* 500 F. 3d 1230 (11th Cir. 2006).

  The Florida and Miscellaneous Defendants filed a deluge of vexatious pleadings after they not coincidentally refused to meet and confer to resolve these issues. They had no intention of allowing these depositions to proceed prior to the current discovery deadline of November 19, 2015 and attempted simply to run out the clock. In so doing, they now resort to proffering false and misleading affidavits concerning service of process and a multitude of personal, ad hominem attacks against Plaintiff's Florida lead counsel, Larry Klayman. They do this because the stakes of discovery are so high for them, as discussed throughout this brief and the initial brief. This conduct is vexatious and unreasonable, and has significantly multiplied the pleadings for Plaintiff. The Miscellaneous Defendants and the Florida Defendants are hugely wealthy with net worth in the billions of dollars; Plaintiff is an individual and in failing health. It is grossly unfair and not in good faith for these Defendants – all six of them – to throw their weight around and take advantage of someone who has already been harmed by them to the extreme.

## VIII.   CONCLUSION

For the reasons set forth above, Plaintiff Montgomery respectfully requests this Court to grant his Emergency Motion to Compel Non-Parties Tina Bennett, Priscilla Painton and Simon & Schuster to Comply with Properly-Served Subpoenas and Motion to Take the Depositions by Videoconference and Request for Telephonic Hearing and require Defendants here to testify and produce the documents they have been demanded to produce. No amount of misleading statements about Plaintiff's attempts to resolve this matter short of this unnecessary motion, and personal, ad hominem attacks on Plaintiff's counsel, can deflect from the hard fact that these depositions are integral to proving Plaintiff's case for the reasons discussed above.

Dated: November 23, 2015

Respectfully submitted,

*/s/ Raymond Negron*
Klayman Law Firm
2020 Pennsylvania Ave. Ste. 800
Washington, D.C. 20006
By Raymond Negron, Esq.
New York Bar No.: 4013660
Admitted to S.D.N.Y on March 22, 2002
*Of Counsel*

28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of November 2015, a true and correct copy of the foregoing was filed and served via ECF in the U.S. District Court for the Southern District of New York upon the following:

**Sanford Lewis Bohrer**
**Brian Toth**
Holland & Knight, LLP
Suite 3000
701 Brickell Ave
Miami, FL 33131
Email: sbohrer@hklaw.com
Email: brian.toth@hklaw.com

**Laura R. Handman**
**Micah Ratner**
Davis Wright Tremaine LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington D.C. 20006-3401
Email: laurahandman@dwt.com
Email: MicahRatner@dwt.com

*Attorneys for James Risen Defendant*
*Attorneys for Houghton Mifflin Harcourt Publishing Company Defendant*
*Attorneys for Houghton Mifflin Harcourt Company Defendant*

**Andrew Nieh**
Assistant General Counsel, Litigation and Compliance
CBS Corporation
51 W. 52nd Street
New York, New York 10019
Tel: (212) 975-4239
Fax: (212) 975-3930
Email: andrew.nieh@cbs.com

*Attorney for Simon & Schuster Defendant*
*Attorney for Priscilla Painton Defendant*

**Kevin Marino**
Marino, Tortorella & Boyle, P.C.
437 Southern Blvd.
Chatham Township, New Jersey 07928
kmarino@kmarino.com

*Attorney for Tina Bennett Defendant*

*/s/ Raymond Negron*
Raymond Negron, Esq.